517 A.2d 982

UNITED SERVICES AUTOMOBILE ASSOCIATION

v.

Nathan M. ELITZKY and Judy Elitzky, H/W

and

Honorable Joseph C. Bruno.

Appeal of Nathan ELITZKY and Judy Elitzky, H/W.

UNITED SERVICES AUTOMOBILE ASSOCIATION, Appellant,

v.

Nathan M. ELITZKY and Judy Elitzky, H/W

and

Honorable Joseph C. Bruno.

Superior Court of Pennsylvania.

Argued Sept. 16, 1986.

Filed Nov. 13, 1986.

Stephen A. Scheuerle, Philadelphia, for appellant (at 424) and appellee (at 611).

Larry R. McDowell, Philadelphia, for appellant (at 611) and appellee (at 424).

Ellen Q. Suria, Philadelphia, for Bruno, appellee.

Before CIRILLO, President Judge, and MONTEMURO and HOFFMAN, JJ.

CIRILLO, President Judge:

This is an appeal and cross-appeal from a declaratory judgment entered by the Court of Common Pleas of Philadelphia County. We reverse.

Appellant, United Services Automobile Association ("United") brought an action for declaratory judgment requesting a decree that it had no duty to indemnify or to provide a defense for appellees, Nathan and Judy Elitzky, in an action filed against them by appellee, the Honorable Joseph C. Bruno, Judge of the Court of Common Pleas of Philadelphia County. Judge Bruno's complaint states that from September 9, 1980 until October 4, 1983, Judy Elitzky

was a litigant in certain proceedings in the Orphans' Court Division of the Court of Common Pleas of Philadelphia County over which Judge Bruno presided. The complaint also alleges that during the course of this litigation, the Elitzkys wrote numerous letters which were sent to Judge Bruno, Jack Anderson, the Hon. Charles Klein, Edward G. Rendell, Esq., the District Attorney of Philadelphia, Leroy Zimmerman, Esq., the Attorney General of Pennsylvania, and Marvin L. Block, Esq., in which the Elitzkys stated that Judge Bruno was involved in a "behind the scenes arrangement to circumvent discovery," was believed by "federal officials" to be "a participant in the coverup of the criminal activity of trustees," was guilty of "judicial corruption," attempted to "fix" a case, and had an "improper relationship" with a party to the case and with the law firm of Wolf, Block, Schorr and Solis-Cohen. Judge Bruno has denied all of these allegations.

The complaint contains three counts. Count 7 is entitled "Malicious Defamation" and seeks compensatory damages from the Elitzkys for the allegedly defamatory statements made by them. Paragraph 24 of the complaint states in pertinent part:

At the time of the publication of the letter of September 23, 1983, defendants knew that the statements, inferences and innuendos impugning the integrity of plaintiff contained in that letter were entirely false or, if not, their failure to determine the accuracy of the letter was in utter and reckless disregard of its truth or falsity....

Count II of the complaint is entitled "Intentional Infliction of Emotional Injury" and in paragraph 33, Judge Bruno alleges that:

Defendants published the false and groundless charges against plaintiff as described in this complaint with no legitimate purpose, but rather with the purpose of intentionally inflicting emotional distress upon plaintiff.

Count III is entitled "Punitive Damages" and seeks recovery for the alleged "malicious, intentional and reckless conduct of defendants...."

The Elitzkys purchased a homeowner's insurance policy from appellant United in November, 1979 which was still in force at the time of the acts alleged in Judge Bruno's complaint. The policy provided coverage for "damages because of bodily injury and property damages" subject to the following exclusionary clause:

1. Coverage E—Personal Liability and Coverage F—Medical Payments to others do not apply to bodily injury or property damage.

a. Which is expected or intended by the insured.

United disclaimed coverage under the policy for the acts alleged in Judge Bruno's complaint and in March, 1984, United filed the instant action seeking a declaratory judgment. Upon conclusion of a trial without jury, the court entered a decree that United need not provide coverage but the court refused to rule on the indemnity issue, holding that it was not yet ripe for judicial resolution. The court held that the Elitzkys' need for indemnity may never arise because Judge Bruno may not prevail in his suit. Though the court denied United's request for declaratory relief concerning its obligation to indemnify the Elitzkys, it did so without prejudice to the company's right to seek such relief should a judgment eventually be secured by Judge Bruno.

The court found that the alleged injuries for which Judge Bruno sought compensation were covered by the policy provisions relating to "bodily injury" and "property damage." However, the court then stated that Judge Bruno's causes of action were exclusively based upon intentional tort theories and therefore were excluded from coverage under the policy as damage or injury "intended or expected by the insured." Therefore, the court concluded that United had no duty to defend the Elitzkys in the action brought by Judge Bruno.

At trial, the court granted United's motion in limine seeking to bar the Elitzkys from introducing any testimony or other evidence in connection with their understanding of the coverage provided by the policy and any alleged representations made to them concerning that coverage. The

court ruled that such testimony was impermissible because the policy exclusions were clear and unambiguous.

Appellees, the Elitzkys, present three issues for our review: (1) whether the trial court erred in determining that United is not required to defend the Elitzkys in the action brought by Judge Bruno; (2) whether the trial court erred in not affirmatively determining that United was obligated to indemnify the Elitzkys should Judge Bruno receive a judgment against them; and (3) whether the trial court erred in granting United's motion in limine.

United argues that the trial court erred in not affirmatively deciding that it will have no duty to indemnify the Elitzkys even if Judge Bruno receives a judgment against them.

 The obligation of an insurer to defend an action against the insured is fixed solely by the allegations in the underlying action. *Cadwallader v. New Amsterdam Casualty Co.*, 396 Pa. 582, 152 A.2d 484 (1959); *Vale Chemical Co. v. Hartford Acc. & Indem.*, 340 Pa.Super. 510, 490 A.2d 896 (1985). As long as the complaint comprehends an injury which may be within the scope of the policy, the company must defend the insured until the insurer can confine the claim to a recovery that the policy does not cover. *Vale*, 340 Pa.Super. at 518, 490 A.2d at 900.

Therefore, in order to decide whether United must defend the Elitzkys in the action brought by Judge Bruno, we must determine whether the injuries alleged by Judge Bruno are potentially within the coverage of the Elitzkys' policy. In order to make that determination we must interpret the insurance contract itself. The construction of a writing is a question of law over which this court need not defer to the finding of the trial court. *Erie Ins. Exchange v. Transamerica Ins. Co.*, 352 Pa.Super. 78, 83, 507 A.2d 389, 392 (1986). However, we must remember that it is a contract which we are interpreting and that we must do so in light of the parties' reasonable expectations. *Standard Venetian Blind Co. v. Am. Empire Ins.*, 503 Pa. 300, 469 A.2d 563 (1983).

The standards to be applied in reviewing such a contract are well settled. First, the words included in the instrument must be given their ordinary meaning. *Erie,* 352 Pa.Superior Ct. at 83, 507 A.2d at 392. Second, ambiguous terms in an insurance policy should be construed against the insurer. *Id.* Third, a term is ambiguous only "if reasonably intelligent men on considering it in the context of the entire policy would honestly differ as to its meaning." *Id.* Fourth, the parties true intent must be determined not only from the language but from all the surrounding circumstances. *Id.*

■ Even if coverage is not excluded by the terms of the policy it may be excluded as violative of the public policy of Pennsylvania. *Nationwide Mutual Ins. Co. v. Hassinger,* 325 Pa.Super. 484, 489, 473 A.2d 171, 173 (1984). In *Hassinger,* we held that it is against the public policy of this state to provide insurance for certain intentional acts. This ruling is based on the common law adage that a person should not profit from his wrongful acts. *Id.* The *Hassinger* court defined intent by relying on the Restatement (Second) of Torts, § 8A. The court held that intent means that the actor desired to cause the consequences of his act or that he acted knowing that the consequences were substantially certain to result. *Id.,* 325 Pa.Superior Ct. at 493, 473 A.2d at 175. The court stated that intent may also be transferred from the intended victim to another. *Id.*

Resolution of the first issue hinges on interpretation of the words "intended" and "expected" as used in the Elitzkys' insurance contract. We will apply the foregoing principles to each term separately.

Contemporary liability insurance policies generally exclude coverage for injury or damage intended by the insured. *See* Annot., 31 A.L.R. 4th 957. Understandably, insurance companies do not want to allow a person to insure against harms he may intentionally and unlawfully cause others. This is a corollary of the idea that insurance is meant to cover only fortuitous losses. *See* Keeton, Insurance Law 291 (1971). However, courts have been unable to

reach a consensus as to the correct interpretation of the word intended when it appears in such an exclusionary clause. Some courts have held that the exclusion is inherently ambiguous while other courts have found it to be clear and unambiguous as a matter of law. *See Cowan v. Insurance Co. of North America,* 22 Ill.App.3d 883, 318 N.E.2d 315 (1st Dist.1974) (clause is ambiguous); *Transamerica Ins. Co. v. Thrift-Mart, Inc.,* 159 Ga.App. 874, 285 S.E.2d 566 (1981) (clause is clear and unambiguous).

Though the cases disagree over the proper interpretation of the term, most of them distinguish between intentional actions and intentionally causing a particular result. The vast majority of courts hold that the clause precludes coverage if the insured acted with the specific intent to cause some kind of bodily injury or damage. *See Pachucki v. Republic Ins. Co.,* 89 Wis.2d 703, 278 N.W.2d 898 (1979). *See also* cases collected, Annot., 31 A.L.R. 4th 957.

Some courts, however, focus on whether the act producing the injury was intentional. These jurisdictions have held that when an intentional act results in injury which is a natural and probable consequence of that act, the injuries are excluded from coverage. *Argonaut Southwest Ins. Co. v. Maupin,* 500 S.W.2d 633 (Tex.1973). Other courts have rejected this view as being inapplicable to the interpretation of an insurance contract. *See Continental Western Ins. Co. v. Toal,* 309 Minn. 169, 244 N.W.2d 121 (1976). In *Continental Western,* the court stated that insurance contracts are interpreted in light of the intent of the contracting parties and the legal presumptions of tort law are relevant only if they reflect that intent. *Id.*

Some insureds have asserted that not only should a specific intent to harm be required but it must be an intent to produce the specific damage that in fact occurred. Courts have usually rejected this argument, holding that the exclusion applies as long as some harm is intended, even if the actual damage which results is of a totally different character from that intended. *See Butler v. Behaeghe,* 37 Colo.App. 282, 548 P.2d 934 (1976). *But see Allstate Ins.*

*Co. v. Sparks,* 63 Md.App. 738, 493 A.2d 1110 (1985) (intended means specific intent to cause precise injury which occurs).

However, some courts appear to have held that the exclusion only applies if the actor intended to cause a harm of the same general type as that which did result. *See Riverside Ins. Co. v. Wiland,* 16 Ohio App.3d 23, 474 N.E.2d 371 (1984).

■ From this brief summary it is apparent that exclusionary clauses such as the one in the Elitzkys' insurance policy are susceptible to several reasonable interpretations. Therefore, we must reject the learned trial judge's conclusion that the clause is clear and unambiguous. We hold that as a matter of law, such clauses are ambiguous and must be construed against the insurer. *See Erie,* 352 Pa.Super. at 83, 507 A.2d at 392.

Pennsylvania law is clear on at least one of the issues involved. In our state, the exclusionary clause applies only when the insured intends to cause a harm. Insurance coverage is not excluded because the insured's actions are intentional unless he also intended the resultant damage. *See Mohn v. American Casualty Co. of Reading,* 458 Pa. 576, 326 A.2d 346 (1974). The exclusion is inapplicable even if the insured should reasonably have foreseen the injury which his actions caused.

In *Mohn,* a beneficiary sought to recover on an insurance contract after the insured was fatally wounded by a policeman while fleeing from a burglary. *Id.,* 458 Pa. at 577, 326 A.2d at 347. The insurer disclaimed coverage, asserting that the insured's injury was the reasonably foreseeable result of his own wrongful actions. The Supreme Court rejected this argument and held that coverage was not excluded. The Court ruled that the doctrine of forseeability is inapplicable to the interpretation of insurance contracts. The Court agreed with reasoning similar to that employed by the *Continental Western* court. Both courts held that the interpretation of an insurance contract is controlled by the intention of the parties and technical legal concepts

such as forseeability are little help in understanding an insured's intent. *Id.*, 458 Pa. at 585–86, 326 A.2d at 351–52.

Our Supreme Court considered a similar exclusionary clause in *Eisenman v. Hornberger*, 438 Pa. 46, 264 A.2d 673 (1970). In *Eisenman,* Alton Hornberger broke into the home of Mr. and Mrs. Eisenman to steal some liquor. While in the house, Hornberger lit matches to find his way around and as each match burned down, he dropped it on the floor. One match smoldered for hours, eventually resulting in a fire which completely destroyed the house and the personal property within it. *Id.*, 438 Pa. at 47–48, 264 A.2d at 673–74. At the time, Hornberger was insured under a policy which excluded from coverage "property damage caused intentionally by ... the insured." *Id.*, 438 Pa. at 48–49, 264 A.2d at 674. The court focused on the victim's injury, holding that the exclusion applied only to situations where "the insured intended by his act to produce the damage which did in fact occur." *Id.* The court also stated:

> The insurance policy does not exclude damage resulting from intentional acts of the insured but only damage intentionally caused by him. There is no basis on which to conclude that the insured in this case intended to cause any property damage in dropping the matches as they burned down to the end of the stem.

*Eisenman* appears to align Pennsylvania with those jurisdictions which hold that the exclusion applies if the insured intended to cause a harm of the same general type as that which did occur. The court stated that the fire was not intended because Hornberger did not intend "to cause any property damage...." *Id.* This implies that the court would have considered the damage to be intentional had the insured intended some type of property damage even if he did not wish to start a fire.

Also, Hornberger did intentionally cause the Eisenmans harm as he purposefully broke into their house to steal from them. As noted previously, other courts have held that if an insured intentionally causes some harm, any other

harm which results is also considered intentional even if it is of an entirely different character and magnitude. Under the view of these courts, the fire would be intentional even though it was a different harm than Hornberger intended when he broke into the house. By rejecting this conclusion the court implicitly rejected the reasoning of those jurisdictions.

We also reject the view that intent means specific intent to cause the precise injury which did occur. *See Riverside Insurance Co., supra.* Such an approach would reward wrong-doers by affording them insurance coverage just because their plans went slightly awry. A gunman who intends to shoot a victim in the foot should not be awarded insurance coverage because his aim was faulty and he shot the victim in the heart. The gunman's intention never deviated from its wrongful path. The *Riverside* court's approach also prevents difficulties of proof. An insured would be entitled to coverage unless he admitted that he intended the precise injury which occurred. We hope it is not too jaundiced a view of human nature to express doubt that such testimony would be forthcoming.

Our interpretation of *Eisenman* is consistent with the policies underlying that decision. Courts must construe ambiguous clauses in favor of the insured but at the same time insurance companies should not be forced to insure against harm deliberately brought about by the insured. Our interpretation affords maximum coverage to insured persons as coverage is precluded only for harm of the same general type as that which they set out to inflict. This is the harm controlled by the insured and it is this harm which the companies should not be forced to insure against.

This interpretation is also consistent with public policy. Insured persons will not be encouraged to act wrongfully knowing that they are protected by insurance. An insured will only be covered if he causes a harm of a generally different type than that which he set out to cause. This meager protection is hardly sufficient to embolden wrong-doers.

As noted, the opposing viewpoint is that any time harm is intended, the insured is responsible for any and all harm which results no matter how far from the character and magnitude of the injury which the insured actually intended. This view ignores that it is a contract which we are interpreting and that we must do so in light of the parties reasonable expectations. *Standard Venetian Blind Co. v. Am.Empire Ins.*, 503 Pa. 300, 469 A.2d 563 (1983). Innumerable hypothetical examples may be created which illustrate the point. An insured angrily slaps someone in the face, intending only to sting the victim's cheek. But the person's head jumps back from the impact and hits a wall, causing neurological damage and sending the victim into a coma. The insured intentionally caused the victim harm and under the view that it does not matter what type of harm results, the insured would be denied insurance coverage. Yet, would any reasonable insured expect that in such circumstances he would be viewed as having intended that a coma would result? Such a conclusion is based on legal notions of intent and causation which have very little relevancy to a layman's expectations when he signs an insurance contract.

As previously noted, in *Mohn, supra,* our Supreme Court held that the doctrine of foreseeability is inapplicable to the interpretation of insurance contracts. *Mohn* 458 Pa. at 581, 326 A.2d at 349. The Court reasoned that such legal concepts are little help in understanding an insured's intent. Likewise, we believe that complicated and technical doctrines of intent and causation are little help in determining an insured's reasonable expectations as to his insurance coverage.

As we stated in *Hassinger, supra,* intent means that the "actor desired to cause the consequences of his act" or that he acted knowing such consequences were "substantially certain to result...." *Hassinger,* 325 Pa.Super. at 493, 473 A.2d at 175.

■ We adopt the *Hassinger* court's definition of intent even though that case did not deal with the interpretation of

a contractual provision. *Hassinger* dealt only with what type of acts should be excluded from insurance coverage as violative of public policy. However, we feel that an "intended" harm clause should be coterminous with the public policy exclusion. A contrary conclusion would lead to the illogical holding that certain acts are not excluded from coverage under an "intended harm" clause but are nonetheless excluded because of public policy. The law is complex enough without the addition of such highly technical and ultimately pointless distinctions.

In summary, we hold that an intended harm exclusionary clause in an insurance contract is ambiguous as a matter of law and must be construed against the insurer. We hold that such a clause excludes only injury and damage of the same general type which the insured intended to cause. An insured intends an injury if he desired to cause the consequences of his act or if he acted knowing that such consequences were substantially certain to result.

In light of the preceding discussion, it is apparent that Judge Bruno's complaint does state a cause of action which may be covered by the Elitzkys' insurance policy. Judge Bruno's libel claim is excluded under the policy's intended harm provision only if the Elitzkys made their comments about the judge with the specific intent to cause him a harm generally similar to the emotional distress or injury to reputation which the Judge allegedly suffered. If the Elitzkys are found to have made false statements about the judge even though they knew their claims were untrue, such an intent to harm might be presumed. But Judge Bruno can recover on his libel claim even if the Elitzkys thought their claims were true if that belief was in reckless disregard of the truth. *Braig v. Field Communications,* 310 Pa.Super. 569, 456 A.2d 1366 (1983). If the Elitzkys believed their statements were true then it is very possible that they did not make them for the purpose of injuring Judge Bruno. It is possible that the Elitzkys recklessly disregarded the truth and libeled Judge Bruno yet did so with pure hearts. For instance, they may have acted in-

tending only to help reform the court system. Even so, if they recklessly ignored the possibility that their beliefs about Judge Bruno were misguided, liability may be imposed. Theoretically, Judge Bruno may succeed in his cause of action even if the Elitzkys intended him no harm. In that situation, the "intended injury" exclusion would be inapplicable. In this regard, it is essential to distinguish intent from recklessness. In *Hassinger, supra,* we stated that a person acts intentionally when he desires to cause the consequences of his act or believes those consequences are substantially certain to result from it.

The Restatement (Second) of Torts states that as "the probability that the consequences will follow decreases, and becomes less than substantial certainty, the actor's conduct loses the character of intent, and becomes mere recklessness...." Restatement (Second) of Torts § 8A.

Recklessness is defined in § 500 of the Restatement which has been adopted by the Pennsylvania courts. *See Stubbs v. Frazo,* 308 Pa.Super. 257, 260–61, 454 A.2d 119, 120 (1982). Section 500 provides:

> The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

Restatement (Second) of Torts § 500.

However, some cases suggest that the standard for recklessness for purposes of a libel case is slightly different from the usual definition cited above. In *St. Amant v. Thompson,* 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968), the Supreme Court stated that recklessness for libel purposes can be established based on a conclusion "that the defendant, in fact, entertained serious doubt as to the truth of his publication." *Id.* at 731, 88 S.Ct. at 1325. Even if recklessness is defined in this manner, the Elitzkys should

still be covered by the policy. It is possible that they doubted the truth of their allegations about Judge Bruno but decided to send the letters anyway. They could have made this decision because of a belief that their actions would aid society. Resolving one's doubts in favor of helping society is not the equivalent of intentionally harming someone.

Similarly, Judge Bruno may recover for intentional infliction of emotional distress even if the Elitzkys did not have the specific intent to cause him such distress as long as they acted recklessly. *Jones v. P.M.A. Ins. Co.*, 343 Pa.Super. 411, 495 A.2d 203 (1985). Though Judge Bruno has only alleged recklessness under the count in his complaint for libel, we note that he may amend his complaint at a later time. Therefore, Judge Bruno's complaint clearly comprehends injuries which may not be excluded from coverage by the intended injury clause.

However, our inquiry does not end here as the policy in question also excludes injury "expected" by the insured. During the 1960's, insurance companies re-wrote the standard liability policy, adding an exclusion for injuries expected by the insured. The companies wished to exclude coverage for certain foreseeable results. They were aware that the courts had been generally unsympathetic to such an exclusion when construing the term "intended" in the old policies. The companies added "expected" to the new standard policy hoping to broaden the class of excluded injuries. *See* Keeton, *Insurance Law* 299–300 (1971).

Ever since this change, courts have puzzled over the proper interpretation of the term. The main areas of disagreement have been: (1) is there any difference between "intended" injury and "intended and expected" injury; (2) whether "expected" connotes an element of conscious awareness by the insured; and (3) what degree of forseeability is required to exclude an injury from coverage as "expected". *See* Annot., 31 A.L.R. 4th 957.

Some jurisdictions have ruled that intended and expected are synonymous when used in insurance policies and when

used together, do not detract nor add to the other term. *See Grange Mutual Casualty Co. v. Thomas*, 301 So.2d 158 (Fla.App.2d 1974). In *Grange*, the court reasoned that differentiating between the legal consequences of the two terms would be inconsistent with a layman's reasonable expectations.

Some cases have ruled that intended and expected are distinguishable. In *City of Carter Lake v. Aetna Cas. and Sur. Co.*, 604 F.2d 1052 (8th Cir.1979), the court held that an injury is expected if the actor knew or should have known that there was a substantial probability the harm would result from his actions. *Id.* at 1058–59.

Other courts have distinguished the two terms but rejected the *Carter Lake* court's interpretation. In *C. Raymond Davis & Sons, Inc. v. Liberty Mut. Ins.*, 467 F.Supp. 17 (E.D.Pa.1979), the court defined expected as "more likely than not." *Id.* at 20. However, the court also held that the insured must be aware that the risk of harm is more likely than not. *Id.* at 20–21. Even if the insured should have been aware of the risk but was not, the injury may not be excluded from coverage.

In *Bay State Ins. Co. v. Wilson*, 96 Ill.2d 487, 71 Ill.Dec. 726, 451 N.E.2d 880 (1983), the court agreed that expected connotes an element of conscious awareness on behalf of the insured. The court then held that expected means that the insured acted even though he was consciously aware that the injury was practically certain to result. *Id.* at 490, 71 Ill.Dec. at 729, 451 N.E.2d at 883.

As we have previously noted, the words in an insurance policy are to be given their common, ordinary meaning. *Erie*, 352 Pa.Super. at 83, 507 A.2d at 392. Webster's defines "expect" as follows:

3a. to look for, specifically to anticipate the coming of.

3b. to look forward to, specifically to anticipate the occurence of.

4a. to consider probable or certain.

Each of these definitions connotes an element of conscious awareness by the insured. None of them defines expected as events the insured should have known about. We are also fearful that an exclusion of injuries the insured "should have anticipated" might exclude from coverage, not only intentional injuries but also those caused by negligence. As the court stated in *Grange, supra:*

> "[I]f we were to give the exclusion before us the meaning argued by appellant, then, by a parity of reasoning, we would have to exclude any injury from an unintentional tort which a given jury might categorize as being "expected" depending upon the degree of likelihood thereof under the facts and circumstances of the case. Conceivably, indeed, this might include an injury resulting from simple negligence...."

*Id.* at 159.

■ We do not believe that a layman would reasonably expect that as a result of the inclusion of such a phrase in his insurance contract he might not be insured for negligent acts. These are the very acts which insurance is purchased to protect against. Even if the "more likely than not" view only excludes coverage for gross negligence few laymen would realize that such serious legal consequences emanate from the word "expected." Therefore, we hold that the term expected, for purposes of an insurance exclusion, does connote an element of conscious awareness on the part of the insured. It is fair to say that when a person expects something, he is consciously aware that it is going to occur.

■ Though we have decided that the insured must be aware that the harm is likely to result, the question remains, how likely must that harm be? As discussed above, some courts have said, more likely than not while other courts have ruled the insured must be practically certain of the result. This very disagreement over the term's proper meaning demonstrates that it is susceptible to more than one reasonable interpretation. Therefore, it is ambiguous and must be construed against the insurer. *Erie,* 352 Pa.Super. at 83, 507 A.2d at 392.

In light of our obligation to construe ambiguous terms in favor of the insured, we find the *Bay State* court's interpretation persuasive. We hold that for purposes of an exclusionary clause in an insurance contract, expected injury means that the insured acted even though he was substantially certain that an injury generally similar to the harm which occurred would result. This interpretation affords insured persons the maximum legal protection they could reasonably expect under a contract excluding expected injuries.

■ However, this definition is also encompassed within the definition of intentional adopted by the *Hassinger* court. Therefore, we find ourselves in agreement with those jurisdictions which have ruled that intentional or expected are synonomous for purposes of insurance exclusionary clauses. In doing so, we have balanced the need to protect laymen from unforeseeable and hypertechnical legal constructions against the insurance industry's right to control which risks it wishes to provide contractual protection for. If the industry feels that our decision is in error and in serious conflict with its interests, its task is a simple one. It can protect itself by re-writing its policies to clearly exclude those risks against which it does not want to insure.

■ For the foregoing reasons, we find that United must defend the Elitzkys in the suit filed by Judge Bruno. In light of our disposition of this issue, it is unnecessary for us to examine the third issue presented for our review. We agree with the learned trial court that the issue of United's obligation to indemnify the Elitzkys is not yet ripe for judicial resolution. It is possible that Judge Bruno's cause of action will be unsuccessful and the Elitzkys will never need to be indemnified. A declaratory judgment must not be employed for the determination of rights in anticipation of an event or events which may never occur. *Johnson Estate*, 403 Pa. 476, 171 A.2d 518 (1961). Therefore, the trial court properly dismissed, without prejudice, United's request for declaratory relief on this issue.

Reversed.