548 A.2d 246

**GENE'S RESTAURANT, INC., Appellant,**

v.

**NATIONWIDE INSURANCE CO., Appellee.**

Supreme Court of Pennsylvania.

Submitted Jan. 19, 1988.

Decided Sept. 27, 1988.

Anthony J. Sciolla, Jr., Huntington Valley, for appellant.

Robert Keller, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

STOUT, Justice.

In this case we consider an insurer's duty to defend under a comprehensive general liability policy.

The question arises out of the refusal of Nationwide Insurance Company to defend its insured, Gene's Restaurant, Inc., against a complaint in trespass alleging the willful and malicious assault and beating of one of its patrons, Patricia A. Aschenback. Nationwide refused to defend on the ground of noncoverage. Gene's Restaurant then filed an action in assumpsit against Nationwide seeking to recover the amount it had expended for costs and fees incurred in defending the trespass action. An arbitration panel found in favor of Gene's Restaurant. In the *de novo*, non-jury trial which followed upon appeal, the Court of Common Pleas found in favor of Nationwide and held, as a matter of law, that an insurer may base its decision to defend solely on the allegations of the Complaint. The Superior Court affirmed, 362 Pa.Superior Ct. 642, 520 A.2d 1219, and so do we.

> An insurer's duty to defend an action against the insured is measured, in the first instance, by the allegations in the plaintiff's pleadings ...
> . . . .
> [I]n determining the duty to defend, the complaint claiming damages must be compared to the policy and a determination made as to whether, if the allegations are sustained, the insurer would be required to pay resulting judgment.... the language of the policy and the allegations of the complaint must be construed together to determine the insurer's obligation.

7C J. Appleman, *Insurance Law and Practice* § 4683, at 42, 50 (W. Berdel ed. 1979) (footnotes omitted). *See also Cadwallader v. New Amsterdam Casualty Co.,* 396 Pa. 582, 152 A.2d 484 (1959); 14A G. Couch, *Insurance* § 51:44, at 458–69 (M. Rhodes 2d rev. ed. 1982); 1A H. Long, *The Law of Liability Insurance* § 5.02, at 5–19 to –39, § 5.04, at 5–41 to –42 (1987).

Following these principles, we make the requisite comparison. Paragraph four of the Complaint in Trespass reads:

On or about January 6, 1976, at or about 1:30 a.m., the defendant ... willfully and maliciously assaulted and beat the wife plaintiff, PATRICIA A. ASCHENBACK, striking her with fists and with great force and violence repeatedly shook, cast and threw the said plaintiff to the ground causing plaintiffs to sustain the injuries and damages hereinafter set forth.

The policy provided comprehensive general liability insurance, including "bodily injury liability," for "each occurrence." The definition section of the policy stated that:

"bodily injury" means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom

. . .

. . . .

"occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured ...

Under this definition an "occurrence" is an accident.[1] The willful and malicious assault alleged in the complaint is not an accident but rather is an intentional tort. As such, it is not covered by the policy and, therefore, the insurer owed no duty to defend. *Wilson v. Maryland Casualty Co.,* 377

1. Gene's Restaurant argues that because it neither "expected" nor "intended" Ms. Aschenback's injuries, Nationwide had a duty to defend. Such a reading ignores the policy requisite that the "occurrence" must be an accident which a malicious, willful assault and beating could never be. In this regard, Gene's Restaurant's reliance on *United Services Auto. Ass'n v. Elitzky,* 358 Pa.Super. 362, 517 A.2d 982 (1986), *allocaturs denied,* 515 Pa. 600, 528 A.2d 957, 515 Pa. 601, 528 A.2d 957 (1987), is also misplaced. *Elitzky* first found the conduct alleged, namely malicious defamation and the intentional infliction of emotional distress, could have been "reckless" as opposed to intentional, and then defined synonymously the exclusionary terms "intentional" and "expected" as encompassing a "desired consequence," "substantially certain to result," *Id.* 358 Pa.Super. at 375, 380, 517 A.2d at 989, 991, as would certainly be the case with Ms. Aschenback's allegations.

Pa. 588, 105 A.2d 304 (1954).[2] *See also* Annotation, *Allegations in Third Person's Action Against Insured as Determining Liability Insurer's Duty to Defend,* 50 A.L.R.2d 458 (1956).

The order of the Superior Court is affirmed.

ZAPPALA, J., concurs in the result.

PAPADAKOS, J., files a dissenting opinion.

PAPADAKOS, Justice, dissenting.

I dissent.

This Court has repeatedly held that where the language of an insurance policy is ambiguous, obscure, uncertain, or susceptible to more than one construction, our courts will construe the language most strongly against the insurer and accept the construction most favorable to the insured. *D'Allessandro v. Durham Life Insurance Co.,* 503 Pa. 33, 467 A.2d 1303 (1983). If we err in an interpretation, we must err in favor of coverage for the insured. *Motley v. State Farm Mutual Automobile Insurance Co.,* 502 Pa. 335, 466 A.2d 609 (1983). See also, *Mohn v. American Casualty Company of Reading,* 458 Pa. 576, 326 A.2d 346 (1974); *Penn–Air, Inc. v. Indemnity Insurance Co. of North America,* 439 Pa. 511, 269 A.2d 19 (1970); *Hafer v. Schauer,* 429 Pa. 289, 239 A.2d 785 (1968); *Miller v. Boston Insurance Co.,* 420 Pa. 566, 218 A.2d 275 (1966); *Gnagey v. Pa. Threshermen and Farmers' Mutual Casualty Insurance Co.,* 332 Pa. 193, 2 A.2d 740 (1939); *Western Insur-*

**2.** Courts of other jurisdictions have had occasion to consider the question of the duty to defend in assault and battery cases in which the liability insurance policy defined "occurrence" in the exact words as the policy in this case. They too have decided that the intentional torts of assault and battery are excluded from coverage and the insurer has no duty to defend. *See Aetna Casualty & Surety Co. v. Freyer,* 89 Ill.App.3d 617, 44 Ill.Dec. 791, 411 N.E.2d 1157 (1980); *Briscoe v. Travelers Indem. Co.,* 18 Wash.App. 662, 571 P.2d 226 (1977); *Hartford Fire Ins. Co. v. Spreen,* 343 So.2d 649 (Fla.App.1977); *Hebert v. Burton,* 432 So.2d 1109 (La.App.1983) (duty to indemnify). *See also* Annotation, *Construction and Application of Provision of Liability Insurance Policy Expressly Excluding Injuries Intended or Expected by Insured,* 31 A.L.R.4th 957 (1984).

*ance Co. v. Cropper,* 32 Pa. 351, 6 P.L.J. 209, 75 Am.Dec.
561 (1859).

The majority has insensibly abandoned this sound doctrine today. Granting that the duty of Appellee, Nationwide Insurance Co., to defend is dependent upon its ultimate duty to compensate should the underlying suit against its insured be lost, coverage, and therefore duty to compensate, turns on the following language in the insurance policy at issue:

"occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured. . . .

Allegedly, Mrs. Aschenback, was willfully, maliciously and repeatedly assaulted physically while a patron in Appellant's restaurant. She sued Appellant. Appellant itself was not guilty of intentional wrongdoing in the attack. It is certainly reasonable to argue that if the allegations in the underlying suit were proven, Mrs. Aschenback was subject to "continuous or repeated exposure to conditions, which results in [her] bodily injury or property damage neither expected nor intended from the standpoint of the insured [Appellant] . . ." The policy defines "occurrence" as meaning an "accident," and "accident" is defined to include such a "continuous or repeated exposure to conditions." This may be an unusual and expansive way to define an accident, but that is what the policy says. "Accident" is defined so that it includes such an eventuality. It is perfectly reasonable to assume that Appellant purchased this policy to protect itself from lawsuits arising from such occurrences which, after all, are not unheard of in an establishment that serves food to the public. As long as it can be reasonably argued that the definition contained in this policy covers the attack on Mrs. Aschenback, and there is no doubt in my mind that the argument is at least plausible, then under our law the policy should be most strongly construed against the insurance company and in favor of the insured.

This convoluted clause was inserted in the policy by Nationwide and was intended for their benefit. If it is tortured or obscure, it is their fault. A lay person could not be expected to grasp the fact that an occurrence, such as happened here, was excluded from coverage. Since the clause is capable of two interpretations, that should be adopted which is most favorable to the insured. If we were to decide this case correctly, and Nationwide did not care for the result, it could easily amend its standard policy in the future by adopting clear and unambiguous language.

For the reasons set forth above, I would reverse the Superior Court.