## Germantown Insurance Co. v. Martin

*Peter H. Hileman,* for plaintiff.

*Paul R. Beckert Jr.,* for defendant Edward Van Kirk.

*Louis F. Floge,* for defendant Russell Martin and Florence Martin.

KELTON, *J.,* June 29, 1989 — This is a declaratory-judgment action to determine rights under a homeowners' insurance policy.

On May 26, 1986, Robert Martin, upset that his former girlfriend, Cindy White, had left him for Jeff Trynoski, entered the Trynoski's one-floor Levittown home. At the entrance to the home, he was met by Jeff's brother, David, who had been eating breakfast in the kitchen. Martin shot and killed David who had met him at the door, next proceeded about 10 feet into the house and fired four shots across the 15-foot living room, wounding Edward Van Kirk who had been sleeping on a couch. Martin then shot and killed Jeff Trynoski's mother, Rose Marie, who, by then, was in the hallway between the kitchen and the bedroom area.

Martin next got into his automobile, drove about five miles to Morrisville and shot and killed himself.

Edward Van Kirk has sued Russell Martin, administrator of Robert Martin's estate and Russell and Florence Martin, individually for damages for the severe injuries sustained in the shooting at the Trynoski house. In that action, Van Kirk has alleged that Robert Martin, while acting under a mental incapacity or delusion, accidently or negligently shot Van Kirk. The Martin family's homeowners' insurance carrier then brought the instant declaratory-

judgment action which requests us to determine that the Van Kirk injuries are not covered because they were "expected or intended" by Martin.

Van Kirk has filed a counterclaim seeking a declaratory judgment that there is coverage.

The sole legal question involved herein is whether Germantown may claim the benefit of an exclusion under section II of Robert Martin's parent's policy. All parties agree that decedent, Robert Martin, was an insured under the policy. The issue is whether or not the injuries inflicted by Robert Martin upon Van Kirk were excluded from the personal liability provisions of section E of the policy because they constituted "bodily injury . . . which is expected or intended by the insured . . . "

We held a hearing on May 1, 1989 on the disputed issues of fact. See Pa.R.C.P. 1601 and Explanatory Note. We enter the following

## FINDINGS OF FACT

Plaintiff is Germantown Insurance Company. Defendants are Russell Martin, the court-appointed administrator of the estate of Robert Martin, deceased, pursuant to letters of administration issued by the Orphans' Court of Bucks County. Other defendants are Russell Martin individually and Florence Martin, his wife, the insured persons under the policy plus defendant, Edward Van Kirk, who was severely injured by the gun shot wounds inflicted by decedent, Robert Martin.

At all material timers, the Martins were insured under a personal liability homeowners insurance policy written by plaintiff, Germantown. Robert Martin, the decedent, was the adult son of Russell and Florence Martin, and resided with them at 6 Crystal Place, Levittown, Pa.

On or about May 26, 1986, Robert Martin entered the household of Rose Marie Trynoski and fired a loaded hand gun a number of times killing Rose Marie Trynoski and David Trynoski. He also seriously injured defendant, Edward Van Kirk.

Thereafter, Van Kirk filed a complaint in the Bucks County Court of Common Pleas to civil action 87-06625. In that complaint he sought compensation for serious, severe and permanent injuries, permanent cosmetic disfigurement and loss of earning capacity. He alleged that medical bills were incurred in excess of $80,000. Van Kirk also averred, inter alia, that he was present at the Trynoski home in Levittown where he had been invited to stay; that he was sleeping on the sofa in the living room at approximately 9:00 a.m.; that the decedent, Robert Martin, "apparently acting as a result of mental incapacity, delusion or other similar mental deficiency, came to the aforesaid house armed with a gun"; that at all relevant times, Van Kirk did not know the decedent, Robert Martin; that decedent Martin did not know plaintiff; and that there was no animosity or ill will between them.

Paragraph 6 of the Van Kirk complaint further avers that "accidently, negligently or inadvertently several of the shots struck plaintiff causing injuries hereinafter set forth."

The injuries averred were that plaintiff suffered five broken ribs, injuries to his leg, stomach, a shattered kidney, injury to the upper part of his intestines as well as bruises and contusions, a shock to his nerves and nervous system and great emotional and mental trauma.

Paragraph 8 of the complaint avers that the injuries "[w]ere due to the negligence, carelessness and recklessness of the defendant acting as administrator of the estate of the deceased [sic] the deceased

being the actor and the injuries sustained by the plaintiff are or will be serious and permanent . . . "

Although the prayers for relief in Germantown's declaratory-judgment complaint ask us to determine first whether or not Germantown is obligated to *provide a defense* for the losses suffered by Van Kirk and also whether Germantown is obligated *to indemnify* the Martins as a result of any judgment that may be entered against them, we believe that at this time we should not decide the issue of Germantown's obligation to indemnify. First, that issue is not yet ripe for resolution. Second, neither party has presented any psychiatric opinion to help explain why Martin would intend to kill or wound three people whom he had no motive to dislike. Decision on the issue of indemnification must await the outcome of the Van Kirk suit against the Martin estate. See *United Services Auto Association v. Elitzky*, 358 Pa. Super. 362, 380, 517 A.2d 982, 992 (1986).[*]

Under the pleadings in the Van Kirk suit against Martin's estate and the bizarre set of circumstances surrounding the tragic series of events herein, we find that plaintiff, Germantown, has not met its burden of proving to us by a preponderance of the evidence that decedent, Robert Martin, "expected or intended" the bodily injuries suffered by Van Kirk. We have concluded that the surrounding events are so bizarre that the decedent, Martin, must have been acting from an enraged or a mentally disturbed state of mind under which he was totally incapable of forming any specific intent with reference to Van Kirk.

The evidence at the hearing was in accord with

---

[*] We recently considered the *Elitzky* case in a different context. See *State Farm Fire and Casualty Co. v. Levine*, 55 Bucks L. Rep. 151 (1989).

the Van Kirk suit pleadings. As noted, on May 26, 1986, at approximately 9:00 a.m., Martin appeared at the door of the Trynoski residence carrying a loaded 9mm automatic. Anthony (David) Trynoski, one of the residents of the household, answered Martin's knock at the door. Thereafter, Martin fired one or more shots at close range at Trynoski. These shots struck Trynoski in the trunk and caused his death. Then, Martin entered the corner of the living room area of the Levittown house where Van Kirk had been sleeping on the couch at the far side of the room. Neither Van Kirk nor Martin knew each other. Martin stood approximately 15 feet from Van Kirk and as testified by Van Kirk:

"I mainly looked him in his eyes as to why this was happening. You know, I was in a bit of startle myself, and all I really noticed is he had a mean — you know, he had a stare like as if something was bothering him and he had like a bandana tied on his head — on his head, and that was it.

"I got hit four times, and it was just firing everywhere.

"I looked at him, I don't know if he was looking at me or where he was looking. Where he was looking must have been where he shot. I'm not sure."

After Van Kirk had been shot, Martin then faced toward the corridor leading to the bedroom area of the Levittown house and shot and killed Rose Marie Trynoski, the mother of Jeff Trynoski. Martin's former fiancee, Cindy White, had left Martin about two or three weeks before this shooting, and had gone to live with Jeff Trynoski at the Trynoski home where the shooting occurred.

About a week before the shooting, Martin told a friend, Kevin Duffy, that he was going to go over to the Trynoski house and start shooting and "kill everybody in the house." At that time, Duffy talked

Martin out of this. Duffy observed that Martin was "depressed" — "very angry" — "upset" and — "fed up." Duffy advised Martin that he ought to see somebody to get help and to talk about his problems.

At about this same time, before the shooting, Martin had become so angry that he had punched his fist through a wall of the garage.

After the shooting in the Levittown house, Martin drove his automobile about five miles to Morrisville, where he committed suicide by shooting himself. As noted earlier, Martin and Van Kirk had not met each other prior to the shooting.

The Martins' homeowners' insurance policy in effect at the time provided that the company has a duty to defend as follows:

"If a claim is made or a suit is brought against any *insured* for damages of *bodily injury* . . . to which this coverage applies, we will:

"(b) provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages resulting from the occurrence equals our limit of liability." (emphasis in original)

Section II provides as follows as to exclusions:

"(1) *Coverage E — Personal Liability* . . . does not apply to *bodily injury* . . . " (emphasis in original)

"(a) which is *expected or intended by the insured* . . . " (emphasis supplied)

## DISCUSSION

Under Pennsylvania law where a claim against an insured potentially may become one which is within the scope of a liability insurance policy, it is the duty of the insurance company to undertake the defense

until it can confine the claim to a recovery not covered by the policy. *Cadwallader v. New Amsterdam Casualty Company,* 396 Pa. 582, 152 A.2d 484 (1959). In the first instance, an insurer's duty to defend an action against the insured is measured by the allegation in the plaintiff's pleadings. In determining the duty to defend, the complaint claiming damages must be compared to the policy and a determination made as to whether, if the allegations are sustained, the insurer would be required to pay the resulting judgment. It is not the actual details of the injury, but the nature of the claim which determines whether the insurer is required to defend. *Springfield Township v. Indemnity Insurance Co. of North America,* 361 Pa. 461, 64 A.2d 761 (1949). Then the language of the policy and the allegations of the complaint must be construed together to determine the insurer's liability. See *Gene's Restaurant Inc. v. Nationwide Insurance Company,* 519 Pa. 506, 548 A.2d 246 (1988); and *Donegal Mutual Insurance Co. v. Ferraro,* 380 Pa. Super. 588, 552 A.2d 699 (1989).

The *Gene's Restaurant* case involved an action where a complaint had been filed against the restaurant in trespass alleging a willful and malicious assault and beating of one of the restaurant's patrons. There, the trial judge's decision to hold that the insurer had no duty to defend under a comprehensive general liability policy was affirmed by the Supreme Court. The policy in the *Gene's Restaurant* case provided comprehensive liability insurance for bodily injury for an "occurrence." Occurrence was defined as meaning an accident, "which results in bodily injury or property damage, neither expected nor intended from the standpoint of the insured . . . " The Supreme Court through Justice Stout held that the willful and malicious assault

alleged in the complaint was not an accident, but was rather an intentional tort and therefore was excluded from coverage.

In contrast, in the instant case, the Van Kirk complaint specifically alleged that the Van Kirk injuries were "due to the negligence, carelessness and recklessness" of decedent Martin.

Our Superior Court has held that a clause in a homeowners policy which excludes coverage for bodily injury that was expected or intended by the insured is ambiguous and may properly be construed against the insurer. *United Services Automobile Association v. Elitzky*, 358 Pa. Super. 362, 517 A.2d 982 (1986). For an analysis of cases in other jurisdictions involving shootings, see annotation: *Construction and Application of Provision of Liability Insurance Policy Expressly Excluding Injuries Intended or Expected by Insured*, 31 A.L.R. 4th 957, 100-236.

Our research, however, has failed to uncover any Pennsylvania authority as to the extent to which *mental derangement* affects the court's determination whether the actor intended or expected a specific bodily injury.

There is a wide divergence of authority in other jurisdictions. See, for example, the mental incapacity cases collected at 33 A.L.R. 4th 983 and compare *USF&G Insurance Company v. Brannan*, 22 Wash. App. 34. 589 P.2d 817 (1979) (jury finding of intentional shooting affirmed) with *Globe American Casualty Company v. Lyons*, 131 Ariz. 337, 641 P.2d 251, 33 A.L.R. 4th 972 (1981) (rejecting the *M'Naghten* insanity test as a proper standard). In *Globe v. Lyons*, the Arizona court followed *Ruvolo v. American Casualty Company*, 36 N.J. 490, 189 A.2d 2024 (1963) and held that:

"If the insured was suffering from a derangement of his intellect which deprived him of the capacity to

govern his conduct in accordance with reason and while in that condition [acted] on an irrational impulse . . . his act cannot be treated as 'intentional' within the connotation of defendant's insurance contract."

See also *Congregation of Rodef Sholom of Marin v. American Motorists' Insurance Company*, 91 Cal. App. 3d 690, 154 Cal. Rptr. 348 (1979).

We believe the appropriate standard to be applied is found in the *Globe, Ruvolo,* and *Rodef Sholom* cases, that Martin was deranged under that standard and that in view of the specific averments of negligence in the Van Kirk complaint against Martin, we should order that the insurance company is required to defend the civil action against Martin's estate. See the analysis by Justice Stout in *Gene's Restaurant v. Nationwide Insurance Company, supra.*

We do not decide herein whether Germantown must pay any judgment rendered against Martin's estate. That issue is premature. See *Elitzky* at 380, 517 A.2d at 992.

We therefore enter the following

## DECLARATORY JUDGMENT

And now, June 29, 1989, plaintiff, Germantown Insurance Company, is required under the provisions of "Section II — Liability Coverages" on page 9 of its homeowners policy no. HO99297 subparagraph (b) to provide a defense at its expense by counsel of its choice to the claim of Edward Van Kirk brought against Russell Martin, administrator of the estate of Robert Martin, deceased, civil action no. 87-06625-09-2 in the Court of Common Pleas of Bucks County. This order is entered as a nisi order to which any party may file a motion for post-trial relief under Pa.R.C.P. 227.1 within 10 days.