NATIONWIDE INSURANCE,
Plaintiff–Appellee,

v.

BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS and Aleck Zavalis, Defendants–Appellants.

Nos. 96–1109, 96–1720.

United States Court of Appeals,
Seventh Circuit.

Submitted June 25, 1996.

Decided June 19, 1997.*

---

* This successive appeal has been submitted to the original panel pursuant to Operating Procedure 6(b). After reviewing the briefs and the record, the panel is unanimously of the view that oral argument is unnecessary. Accordingly, the appeal has been submitted on the briefs and the record alone. See Fed. R.App. P. 34(a); Circuit Rule 34(f).

Ralph Swanson (submitted on brief), Sebat, Swanson, Banks, Garman & Townsley, Danville, IL, for plaintiff-appellee.

John E. Cassidy, III, Cassidy & Mueller, Peoria, IL, for Board of Trustees of the University of Illinois.

Lorna K. Geiler, Meyer, Capel, Hirschfeld, Muncy, Jahn & Aldeen, Champaign, IL, for Southwest Recreational Industries, Inc.

J. Steven Beckett, Holly F. Clemons, Beckett & Webber, Urbana, IL, for Aleck Zavalis.

Before CUMMINGS, FLAUM, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Sometimes common sense prevails, even in the law. This is one of those occasions.

This case returns to us following a remand to the district court. Nationwide Insurance sought a declaratory judgment that it need not defend or indemnify its insured, Aleck Zavalis, in an Illinois state court suit filed by the Trustees of the University of Illinois after Zavalis and two other students set fire to the Astroturf in the football stadium at the University's Urbana Champaign campus, causing in excess of $600,000 in damage. The homeowner's policy that Nationwide issued to Zavalis' parents in Pennsylvania excludes liability for property damage "which is expected or intended by the insured" (R. 51 Ex. A at 11), and Nationwide contended that the damage caused by Zavalis and his cohorts falls into that category, relieving it of the duty either to defend or indemnify Zavalis. In the prior appeal, we concurred with the district court's assessment that it was premature to assess Nationwide's duty to indemnify while the state court action remained pending. *Nationwide Ins. v. Zaval-*

is, 52 F.3d 689, 693 (7th Cir.1995). But we were confident that the insurer's duty to defend could be resolved now based on the facts alleged in the University's complaint against Zavalis—facts which are largely undisputed. *Id.* at 693–97. We remanded the case to the district court for that purpose. On cross motions for summary judgment, Judge Baker concluded that Nationwide was not obligated to defend Zavalis, because Pennsylvania law (which governs this dispute) would deem the damage resulting from his actions expected or intended. *See* Order at 34.[1] We agree.

■ Both Zavalis and the University's Board of Trustees have appealed the district court's judgment, but the Trustees are not properly before us. They are not parties to the underlying insurance contract, and although as the victims of Zavalis' alleged wrongdoing they have an obvious interest in the question of indemnification (which the district court did not reach), they have no interest in whether Nationwide must supply Zavalis with a defense. *Grinnell Mut. Reins. Co. v. Reinke,* 43 F.3d 1152, 1153–54 (7th Cir.1995). The Trustees' appeal is dismissed.[2] (Ironically, the Trustees seem to be handling Zavalis' defense quite nicely on their own: rather than writing his own appellate brief, Zavalis has simply joined the Trustees' brief; so although the Trustees' appeal has been dismissed, Zavalis has the benefit of the arguments they made.)

■ Our prior opinion explored at some length the circumstances under which Pennsylvania courts consider damage to have been "expected or intended" by the insured. 52 F.3d at 695–97. Judge Baker correctly distilled from that discussion this principle: an insured "expects or intends" the injury in question when he acts with an intent or a

---

1. The court therefore granted Nationwide's motion for summary judgment and denied the summary judgment motion filed by Zavalis and the Trustees. All of the defendants subsequently filed motions to reconsider, which the court denied. R. 70.

2. We are not oblivious to the practical import of the resolution of Nationwide's duty to defend Zavalis. Because the duty to defend is a broader

obligation than the duty to indemnify, a holding that Nationwide is not obligated even to defend its insured bodes ill for any future argument that it must indemnify him. Even so, the victim of the insured's alleged wrongdoing suffers no cognizable injury from an adverse assessment of the duty to defend alone, which is all that we have here. *See Grinnell Mut. Reins. Co.,* 43 F.3d at 1153.

conscious awareness that damage will result. Order at 3; *see United Servs. Auto. Ass'n v. Elitzky*, 358 Pa.Super. 362, 517 A.2d 982, 987, 991 (1986). The insured may not "expect or intend" the damage when the actual result is an injury wholly different in kind from the type he anticipated would occur (*Elitzky*, 517 A.2d at 988); and the magnitude of the resulting harm is one factor that can be considered in that assessment (*see* 52 F.3d at 696–97). Yet, the mere fact that the actual damage is more severe than the insured anticipated does not, by itself, necessarily establish that he did not "expect or intend" it. *Id.* at 697; Order at 3. Judge Baker found that "[p]ouring lighter fluid on Astroturf and setting it aflame could only be interpreted as intending some kind of damage." *Id.* Based on the record before him, then, he perceived no way in which the University's claim against Zavalis might be covered by his parents' insurance policy in view of the exclusion for intentional property damage. He accord-ingly concluded that Nationwide had no duty to defend Zavalis in the Illinois suit.[3]

On appeal, Zavalis does not take issue with the notion that if he intended to set fire to some portion of the Astroturf, the resulting damage was "expected or intended" even though far more of the turf burned than he planned on. He instead quarrels with the premise that he intended to burn any part of the Astroturf. We took this as a given in the prior appeal, but in that respect Zavalis claims that we jumped the gun. We did not have Zavalis' deposition in the state court action before us at that time,[4] and there Zavalis testified that it was never his intent for the Astroturf to burn; rather, he and his colleagues thought that the lighter fluid alone would burn, leaving only a residue of soot on the portions of the Astroturf to which it had been applied—spelling out the letters "F–O–O"[5]—which would be visible on television or

---

**3.** The district court found "particularly troublesome" (Order at 3) a footnote in our prior opinion where we observed: "Zavalis could, we suppose, assert that he did not intend to cause any damage whatsoever to the football field ... [and][i]f indeed this premise from which both suits spring were *genuinely* disputed, then it might well be impossible for this suit to proceed until the issue is resolved in the state court action." *Zavalis*, 52 F.3d at 696 n. 12 (emphasis in original). That footnote, to some extent, paved the way for the arguments that Zavalis made on remand, and we can appreciate the sense in which the district court found the footnote troublesome: it suggests that an insured individual can attempt to stave off a determination that his insurer has no duty to defend him simply by disclaiming any intent to cause damage, no matter how inconsistent such a disclaimer may be with the deliberate nature of his conduct. But we think Judge Baker was quite right to focus on our reference to *"genuine"* disputes about the insured's intent. It seems to us inevitable that there will be cases in which an insured is alleged to have intentionally harmed someone or something but in which the proof on this point might truly suggest otherwise. Suppose an insured shoots someone, who then sues him alleging (without concern about the exclusions in the insured's liability coverage) that the shooting was intentional. It is possible to imagine some circumstances in which the insured really did not mean to shoot anyone: maybe he was cleaning the gun when it went off or he believed that it was not loaded. Conversely, there will be cases in which the allegations against the insured suggest that the injury was not deliberate, but the undisputed facts underlying the complaint con-clusively demonstrate otherwise. *See id.* at 694–95. In either case, the court entertaining the declaratory suit will be called upon to examine the record before it to assess whether there is a genuine and plausible dispute as to whether the insured acted with the intent or conscious awareness that his actions would result in damage. We realize that such an assessment will require the court to stray beyond the allegations of the underlying complaint, notwithstanding the general rule that the duty to defend is normally determined based on the face of the complaint alone. *Id.* at 693–94. But such an assessment will occasionally be necessary, on the one hand, to preserve the insured's right to a defense for acts that are conceivably within the policy coverage notwithstanding the label the injured party has placed on them and, on the other hand, to ferret out complaints artfully drafted with an eye on the terms of the insurance policy but which are patently irreconcilable with the undisputed facts.

**4.** There are actually two interviews that Zavalis has given on the record: his 1993 discovery deposition, and an earlier interview conducted by a Nationwide representative, apparently in 1990. R. 66 Exs. 2 and 3. The two are consistent in terms of what Zavalis recalled about the incident and his intent vis a vis the fire. We shall cite the 1993 deposition as "Deposition" and the 1990 interview as "Statement."

**5.** With the benefit of the deposition, we at long last know why they chose the letters "F-O-O." "Foo" was a word derived from "Foofur," a lazy but lovable blue hound dog who held the title

from the bleachers. Deposition at 55–56; Statement at 22–23, 26–27. In fact, Zavalis recalled, he and his friends had tried the same thing on a concrete sidewalk earlier, and had caused no damage (actually, they couldn't get the lighter fluid even to ignite); and to Zavalis, the Astroturf itself felt like concrete, so he thought the results would be equally harmless. Deposition at 40–41, 46–47, 63; Statement at 13, 19, 27. Even after the letters "F–O–O" were ablaze on the field (the flames reaching from eight to eighteen inches into the air), the three young men didn't think they had done any damage to the playing surface. On the contrary, by Zavalis' account, they left the stadium believing nothing was seriously wrong, tossed the lighter fluid bottle into a Port–a–Potty on their way out, and went home to bed, confident they had done no real harm even as they heard the wail of fire engines a short while later. Deposition at 63–69, 74–76, 79–80; Statement at 2527. As Zavalis sees things, then, the district court either should have granted summary judgment in his favor for want of any evidence that he intended the Astroturf to burn or, at the very least, it should have found that there was a dispute of material fact on this question and denied Nationwide's own motion for summary judgment.

In their effort to bring intentional acts within the coverage of insurance policies, insureds and their victims find themselves creatively alleging that the insured "carelessly and negligently failed to refrain from avoiding" his victim (read: repeatedly stabbed him with a four-inch blade), *Allstate Ins. Co. v. Carioto*, 194 Ill.App.3d 767, 141 Ill.Dec. 389, 391, 551 N.E.2d 382, 384 (1990), "negligent[ly], careless[ly] and/or reckless[ly]" "struck" his victim (read: poked her eye out with a broomstick), *Nationwide Mut. Ins. Co. v. Yaeger*, 1994 WL 447405, *2 (E.D.Pa. Aug.19, 1994), *aff'd. without published op.*, 60 F.3d 816 (3d Cir.1995), or "[a]ccidentally, negligently or inadvertently" committed a "trespass" (read: shot his victim four times in the chest at close range with a nine-millimeter automatic), *Germantown Ins. Co. v. Martin*, 407 Pa.Super. 326, 595 A.2d 1172, 1173 (1991).

Zavalis' artful (if less extravagant) spin on his own actions fits comfortably within this genre, and to no greater degree of success. The undisputed (and inescapable) fact is that Zavalis did intend to damage the Astroturf. Whether he meant to actually scorch the Astroturf (to "brand" it, as the University alleges in its complaint[6]) or merely to leave a layer of soot on the turf that could be cleaned away later as if he had used a giant washable Crayola marker, common sense tells us that his purpose was to damage the field nonetheless. Damage need not be permanent to constitute "damage," and defacement certainly qualifies as damage even if is easier and less costly to rectify than several hundred square feet of incinerated Astroturf. What is more, Zavalis meant to inflict that damage by means of fire. We may assume, as Zavalis steadfastly maintains, that he meant only for the lighter fluid to burn, not the Astroturf itself. There might be some quibbling with the plausibility of that plan. The very purpose of an accelerant like lighter fluid is, through its own combustion, to cause other things with a higher flash point (charcoal, for example) to burn; little if any soot is likely to be left behind if the accelerant fails in that purpose. But this may be putting too fine a

role in a Saturday morning cartoon show on television in the late 1980s. Deposition at 55; *see* Charles Solomon, *Saturday Morning: Good and Bad*, Los Angeles Times, Oct. 2, 1986, at 9 ("Foofur ... may be the most vapid program in the history of Saturday morning animation. The laid-back, "hip" title character is the leader of a group of dogs who inhabit a vacant house. They spend so much time being laid-back and "cool" that no one does much of anything.") (Foofur was also featured in a number of children's videos, including Foofur: A Bow-Wow of a Time (Celebrity 1986), Foofur and His Friends (Celebrity 1986), Foofur: Furry Tails Can Come True (Celebrity 1986), and Foofur: He Ain't Nothing But a Hound Dog (Celebrity 1989)). Consistent with the nature of Foofur's character, Zavalis and his friends used the term "foo" to signify "cool" or "fun." Deposition at 55. Thus, "I'm feeling foo" would mean "I'm feeling pretty good right now." Statement at 23. Zavalis and his roommates also referred to their apartment—which was located on the top floor of their apartment complex and thus arguably constituted the penthouse—as "Fooville." *Id.*

6. *See Board of Trustees of Univ. of Illinois v. Astroturf Indus., et al.*, No. 90 L 1233, Third Amended Complaint at 9 para. 5 (Cir. Ct. of Champaign County, Ill.).

point on the matter for three college students whose primary beverages that day had been beer, punch laced with Triple Sec and/or Everclear, Tequila Sunrises, and Alabama Slammers. *See* Deposition at 18–22, 24–26; Statement at 3–7.[7] The important point is that Zavalis and his accomplices did intend for there to be a fire-by Zavalis' account, he simply did not intend for the fire to spread beyond the accelerant and to engulf the Astroturf. But this leaves him no better off than the young vandal who meant only to set a fire within the confines of several boxes of books and ended up causing $1.3 million in damage to a school building. *City of Newton v. Krasnigor*, 404 Mass. 682, 536 N.E.2d 1078, 1082 (1989). For that matter, as Nationwide argues, Zavalis is really no different from the insured who when he took a swing did not expect to break his victim's nose. *State Farm Fire & Casualty Co. v. Levine*, 389 Pa.Super. 1, 566 A.2d 318, 320 (1989).

Aleck Zavalis and his companions most likely had no idea when they sallied forth into the wee hours of that September morning in 1989 that someone would make a federal case out of their prank. Then again, they probably did not anticipate that their little escapade would cost the University more than half a million dollars, either. The principle is as important as the price tag. Nationwide need not supply Zavalis with a defense if the University's complaint against him does not comprehend an injury within the coverage of his parents' insurance policy. Here, Zavalis literally played with fire; and although the resulting harm was far beyond what he expected, "this [was][a] harm controlled by the insured, and it is this harm which the companies should not be forced to insure against." *Elitzky*, 517 A.2d at 988. Nationwide is entitled to a declaration that it is not obligated to defend Zavalis against the University's Illinois suit. We therefore affirm Judge Baker's grant of summary judgment in favor of Nationwide.

---

**7.** Zavalis makes no argument, however, that his acknowledged state of intoxication bears on the assessment of his intent. *Cf. Montana v. Egelhoff,* —— U.S. ——, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) (upholding Montana statute providing that voluntary intoxication may not be considered in determining whether defendant had requisite mental state to be convicted of a criminal offense).

Appeal No. 96–1109 is DISMISSED; and the judgment in No. 96–1720 is AFFIRMED.