Charles VIOLA, Plaintiff,

v.

FIREMAN'S FUND INSURANCE COMPANY, Defendant.

Civil Action No. 96–7387.

United States District Court, E.D. Pennsylvania.

April 3, 1997.

William G. Blasdel, Jr., Philadelphia, PA, for Plaintiff.

Allan C. Molotsky, Christopher P. Seerveld, Post & Schell, P.C., Philadelphia, PA, for Defendant.

### MEMORANDUM

YOHN, District Judge.

On March 16, 1990, plaintiff Charles Viola sustained personal injuries when struck at his place of work by fellow employee Albert Francks. In 1992, Viola obtained a default and then a judgment by consent against Francks in the amount of $558,816.00.

On November 1, 1996, Viola filed the instant diversity suit against Fireman's Fund Insurance Company (Fireman's Fund) to recover on the judgment. Francks has assigned his right against Fireman's Fund to Viola and Viola seeks the indemnification that he alleges is due Francks under the contract of insurance provided by Fireman's Fund to Francks' employer. In addition, Viola alleges breach of contract and bad faith claims against Fireman's Fund's for its failure to defend Francks in the underlying action.

Fireman's Fund has moved to dismiss Viola's complaint for failure to state a claim upon which relief can be granted. For the reasons that follow, Fireman's Fund's motion will be granted.

## I. BACKGROUND

The following is a summary of the facts as alleged in Viola's complaint, and the procedural history as stated in related court documents and judicial decisions.

In 1990, Viola and Francks were employees at Colonial Village Meat Market (Colo-

nial) on Walnut Street, Philadelphia, Pennsylvania. In the instant complaint, Viola alleges that on March 16, 1990, Francks was on the job working when Viola stopped in the parking lot to talk to another Colonial employee, Dominic Pocoppio. Viola entered Colonial and, before starting work, approached Francks. The two were talking between cash registers when Viola abruptly turned to leave. As he turned, his arm came out from his body. Seeing this, Francks thought that Viola was about to throw a punch at him. Believing he was in physical peril, Francks struck Viola with what he believed was reasonable force. As a result, Viola suffered bodily injury, including a concussion.

On March 13, 1992, Viola filed suit for personal injuries against Francks, Colonial, and Pocoppio in the United States District Court for the Eastern District of Pennsylvania. In that complaint (which Viola attaches to his present complaint), Viola alleged as follows:

> Viola was working at the Colonial Village Meat Market when [ ] Albert Franks [sic] struck him from behind, without warning, crushing most of the bones on the right side of plaintiff face, leaving him momentarily unconscious. Albert Franks then struck plaintiff in the face again, and kicked plaintiff in the stomach and legs while he lay on the floor, all of which caused plaintiff serious permanent bodily injury.

Colonial's various insurance carriers provided Colonial and Pocoppio with counsel to assist in their defense. Francks was unrepresented.

On October 22, 1992, the court entered a default order against Francks in the underlying case for failure to answer the complaint. On November 3, 1992, Francks assigned to Viola all his rights, interests or claims against Colonial's insurers, American Manufactures Mutual Insurance Company (American), Lebanon Mutual (Lebanon), and Fireman's Fund. American provided Colonial with worker's compensation and employer's liability insurance, Lebanon provided primary business insurance, and Fireman's Fund provided excess and umbrella liability insurance.

On November 6, 1992, the court granted Colonial and Pocoppio summary judgment, and approved a stipulation by Viola and Francks entering judgment against Francks for $558,816.00. On November 10, 1992, the court formally entered judgment against Francks.

To collect on judgment, on November 24, 1992, Viola filed a praecipe for writ of execution and interrogatories of attachment against Lebanon and American and on December 3, 1992, Viola filed similar documents against Fireman's Fund. Viola withdrew his interrogatories of attachment filed against Lebanon on December 18, 1992. On February 26, 1993, Fireman's Fund answered the garnishment interrogatory and filed counterclaims and on April 4, 1993, Viola moved to dismiss Fireman's Fund's counterclaim, but later withdrew his motion. On May 27, 1993, Viola filed a praecipe to withdraw his writ of execution directed at Fireman's Fund without prejudice, and proceeded solely against American. Fireman's Fund did not stipulate to Viola's withdrawal of his garnishment writ. On January 3, 1994, the district court ruled that American owed no indemnification to Viola because Francks was not an "insured" under American's policy. *Viola v. Franks,* No. 92–1513, 1994 WL 3400 (E.D. Pa. Jan 4, 1994).

On November 25, 1992, Lebanon filed a declaratory judgment against all parties in the Delaware County Court of Common Pleas, requesting a ruling that it had no obligation to indemnify or defend Francks for the injuries he caused to Viola. That action is still pending.

On November 1, 1996, Viola, as Francks' assignee, filed the present suit against Fireman's Fund. Viola seeks the indemnification he alleges is due Francks under section I, Coverage B (umbrella policy) of the Fireman's Fund policy. Additionally, Viola alleges claims of breach of contract and bad faith, and seeks punitive damages, relating to Fireman's Fund's refusal to defend Francks in the underlying action.

## II. DISCUSSION

■ Fireman's Fund asserts that Viola's complaint fails to state a claim upon which relief can be granted. Specifically, Fireman's Fund raises the following arguments: Francks' assignment of his rights under the policy to Viola is not binding on Fireman's Fund and has no effect; the court should abstain in light of ongoing proceedings in the Court of Common Pleas for Delaware County; Viola's complaint was already dismissed with prejudice; Viola's injuries are not covered under Fireman's Fund's umbrella policy; there was no breach of contract or bad faith because no coverage exists; and no tort against an insurance company for breach of fiduciary duty exists in Pennsylvania.

### A. Standard of Review

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true and view in a light most favorable to the plaintiff all allegations made in the complaint. *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 249, 109 S.Ct. 2893, 2905–06, 106 L.Ed.2d 195 (1989); *Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989). A motion to dismiss will only be granted if it is clear that relief cannot be granted to the plaintiff under any set of facts that could be proven consistent with the complaint's allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984). "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Ind.,* 998 F.2d 1192, 1196 (3d Cir. 1993). Public records include letter decisions of government agencies and published reports of administrative agencies. *Id.* at 1197. In addition, a court may consider undisputed authentic documents submitted by the defendant if the plaintiff's claims are based on such documents. *Id.* at 1196.

Therefore, in considering Fireman's Fund's motion, the court will consider Viola's present complaint, Fireman's Fund's insurance policy, Viola's personal injury complaint against Francks, and Magistrate Judge Smith's opinion in the garnishment portion of the underlying action.

### B. Francks' Assignment of Rights Against Fireman's Fund to Viola

Fireman's Fund argues that Francks' assignment of his rights to Viola is not binding on Fireman's Fund because the policy states that an assignment is invalid without the insurer's consent. (Defend.Exhib. B at 7 ("Assignment of interests under this policy shall not bind us until our consent is endorsed hereon....").) In response, Viola argues that the non-assignment clause merely prohibits plaintiffs from enforcing the rights of an insured without first obtaining a judgment against the insured.

■ Under Pennsylvania law, an insurer may not limit an insured's ability to assign his or her rights under a policy after the occurrence of the event which gives rise to the insurer's liability. In *National Memorial Services v. Metropolitan Life Insurance Company,* 355 Pa. 155, 49 A.2d 382 (1946), the Pennsylvania Supreme Court addressed the issue of whether a non-assignment clause precluded the beneficiaries of a life insurance policy from assigning their proceeds from the policy. The court held that despite the presence of a non-assignment clause in an insurance contract, "[a]n assignment of the policy or rights thereunder after the occurrence of the event, which creates the liability of the insurer, is not [ ] precluded." *Id.* 49 A.2d at 383. The court reasoned that

> [a]fter a loss has occurred, the right of the insured or his successor in interest to the indemnity provided in the policy becomes a fixed and vested right; it is an obligation or debt due from the insurer to the insured, subject only to such claims, demands, or defenses as the insurer would have been entitled to make against the original insured.

*Id.* (quoting Couch Encyclopedia of Insurance Laws, Vol. 6, § 1459, at 5275).

Similarly, in *Continental Casualty Co. v. Diversified Industries,* 884 F.Supp. 937, 946 (E.D.Pa.1995), the court held that "because an insured's right to proceeds vests at the time of the loss giving rise to the insurer's

liability, restrictions on an insured's right to assign its proceeds are generally rendered void." In *Continental Casualty*, the insurer sought a declaratory judgment that it was not obligated to provide coverage for remediation of environmental damage caused by defendants, one of whom was its insured. The insured entered into a settlement with a co-defendant and assigned its claims against the insurer to the co-defendant. *Id.* at 942. The insurer argued that a non-assignment clause in the insurance policy precluded the insured from assigning its indemnity claim without the insurer's consent. The court stated that the non-assignment clause notwithstanding, "a mere denial of coverage by an insurer triggers an insured's right to assign its rights to an injured claimant." *Id.* at 948. The court reasoned that a non-assignment clause is designed to guarantee that the insurer's risk of loss cannot be increased by the assignment of the policy without the insurer's consent and, therefore, courts will enforce the clause to prevent the insured from assigning coverage to a new insured. However, the court noted that the insurer's risk of loss is not affected where the insured assigns his or her policy rights after the occurrence of the events that give rise to the claim for indemnity. *Id.* at 946.

Fireman's Fund cites two recent Pennsylvania Superior Court cases that enforced a non-assignment clause to invalidate the insureds' assignment to automobile repair shops of their right to payment from the insurer for property damage to their automobiles. *Fran & John's Doylestown Auto Ctr. v. Allstate*, 432 Pa.Super. 449, 638 A.2d 1023, 1025 (1994); *High-Tech-Enterprises v. General Acc. Ins. Co.*, 430 Pa.Super. 605, 635 A.2d 639, 641–42 (1993). In both decisions, neither of which cite *National Memorial*, the courts held that Pennsylvania law requires the enforcement of clear and unambiguous provisions in insurance policy agreements.

■ Here, the court holds that Francks' claims against Fireman's Fund are assignable despite the non-assignment clause because Francks' rights against Fireman's Fund have already accrued. To the extent that more recent Pennsylvania Superior Court decisions conflict with a prior Pennsyl-

vania Supreme Court decision, this court must follow the dictates of the Pennsylvania Supreme Court in interpreting Pennsylvania law. *U.S. Underwriters Ins. Co. v. Liberty Mut. Ins.*, 80 F.3d 90, 93 (3d. Cir.1996) (federal court sitting in diversity must "turn to the highest state tribunal to answer a question of state law."). Stipulations in policies forbidding assignments have no effect on the "assignment of the policy or rights after the occurrence of the event, which creates the liability of the insurer[.]" *National Memorial*, 49 A.2d at 383. Non-assignment clauses "are designed to guarantee that an increase of the risk of loss by a change of the policy's ownership cannot occur without the consent of the insured." *Continental Casualty*, 884 F.Supp. at 946 (citing Couch Encyclopedia of Insurance Law 2d, Volume 16, § 63:31). Hence, a non-assignment clause will prevent the insured from assigning coverage provided by a policy to a third party. Indeed

the great weight of authority supports the rule that general stipulations in policies prohibiting assignments thereof except with the consent of the insurer apply to assignments before loss only, and do not prevent an assignment after loss, for the obvious reason that the clause by its own terms ordinarily prohibits merely the assignment of the policy, as distinguished from the claim thereunder, and the assignment before loss involves a transfer of a contractual relationship while the assignment after loss is the transfer of a right to a money claim.

Couch on Insurance 2d, Volume 16, § 63:40 (1983). Here, the events that gave rise to Francks' indemnity claims against Fireman's Fund occurred prior to Francks' assignment of his rights to Viola. Viola's present claim does not seek to expand the policy coverage and increase the risk of loss that Fireman's Fund must accept; rather Viola seeks to recover based on alleged vested rights owed to Francks by Fireman's Fund pursuant to the policy.

*C. Abstention in Light of Pending State Declaratory Judgment Action*

■ Fireman's Fund argues that the court should abstain from exercising jurisdiction under either the *Colorado River* or *Brillhart*

doctrines in favor of a parallel state court action in the Court of Common Pleas of Delaware County. Fireman's Fund states that in November, 1992, Lebanon filed a comprehensive declaratory judgment action against all parties, including Viola and Fireman's Fund, requesting a ruling that Lebanon had no obligation to indemnify Francks. That action is still pending and Fireman's Fund contends that the state action involves the same issues as the present suit. Fireman's Fund argues that federal litigation would be duplicative and uneconomical for the parties, and would waste judicial resources and interfere with the orderly and comprehensive disposition of the state court litigation.

In *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Supreme Court enunciated a doctrine that allowed federal courts to abstain in favor of parallel state proceedings when certain exceptional circumstances are present. *Id.* at 819, 96 S.Ct. at 1247. Among the exceptional circumstances that govern a federal court's decision to abstain are:

> (1) Which court first assumed jurisdiction over property involved, if any;
>
> (2) Whether the federal forum is inconvenient;
>
> (3) The desirability of avoiding piecemeal litigation;
>
> (4) The order in which the respective courts obtained jurisdiction;
>
> (5) Whether federal or state law applies; and
>
> (6) Whether the state court proceedings would adequately protect the federal plaintiff's rights.

*Trent v. Dial Medical of Florida*, 33 F.3d 217, 225 (3d Cir.1994). Abstention under the *Colorado River* doctrine is rare for two reasons: first, generally the pendency of a parallel case in state court will alone not bar federal litigation of a case concerning the same issues; second, the federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Id.* at 223 (citations omitted). "Only the clearest of justifications will warrant dismissal." *Moses H. Cone Memorial Hospital v. Mercury Con-*

*struction Corp.*, 460 U.S. 1, 15–16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983).

"[W]hen a federal court case involves claims that are distinct from those at issue in a state court case, the cases are not parallel and do not justify *Colorado River* abstention." *Trent*, 33 F.3d at 224. Cases are distinct when there is a "lack of identity of all the issues," *University of Maryland v. Peat Marwick Main & Co.*, 923 F.2d 265 268–69 (3d Cir.1991), and when the claims, parties or requested relief differs. *Complaint of Bankers Trust v. Chatterjee*, 636 F.2d 37, 40 (3d Cir.1980).

The court concludes that the present suit involves claims that are distinct from those raised in the Delaware County action. In that action, Lebanon requests the court to declare that Lebanon has no duty to defend or indemnify any person or entity named as a defendant in Viola's original federal action. (Plain.Exhib. K at 8.) Nowhere in Lebanon's complaint does it request the Delaware County court to rule on Fireman's Fund's obligation to defend and indemnify Francks. Further, Lebanon and Fireman's Fund's policy obligations are not identical; Lebanon provides Colonial with primary business insurance while Fireman's Fund provides excess and umbrella insurance. Indeed, Fireman's Fund's umbrella policy applies only when Lebanon's primary insurance does not apply.

■ Even were the court to conclude that the present suit involves claims not distinct from issues in the state case, the court would not abstain because the extraordinary circumstances required for *Colorado River* abstention are not present. Although state law applies and the Delaware County court obtained jurisdiction first, the federal forum is not inconvenient, the Delaware County court proceedings may not adequately protect Viola's rights against Fireman's Fund and the Delaware County action may not comprehensively resolve all claims among all parties to the dispute.

■ Similarly, *Brillhart* abstention does not apply. In suits brought pursuant to the Declaratory Judgment Act, 28 U.S.C.

§ 2201(a), federal courts may decline to hear a claim in favor of a pending state action for reasons of judicial economy, even where the court would have jurisdiction. *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). Federal courts possess greater discretion to abstain in declaratory judgment suits than permitted under the exceptional circumstances test of *Colorado River. Wilton v. Seven Falls Co.*, 515 U.S. 277, 285, 115 S.Ct. 2137, 2142, 132 L.Ed.2d 214 (1995). The Declaratory Judgment Act by its text is committed to discretion. *Id.* Here, Viola's suit is not brought pursuant to the Declaratory Judgment Act. Hence, the judicial discretion enunciated in *Brillhart* is inapplicable and, therefore, the court will not decline to exercise jurisdiction.

### D. Viola's Previous Garnishment Action Against Fireman's Fund

■ Fireman's Fund argues that Viola's complaint has already been dismissed with prejudice because on May 27, 1993, Viola withdrew his writ of execution directed at Fireman's Fund and this withdrawal occurred after Fireman's Fund had answered the writ, and without stipulation of the parties or court consent. In the alternative, Fireman's Fund argues that if Viola's claims are deemed to have not been adjudicated on the merits, Fireman's Fund requests the court to order Viola to pay costs and fees incurred in the prior garnishment action.

In reply, Viola contends that the writ of execution directed at Fireman's Fund was premature because, in order to determine if Francks was covered under Fireman's Fund's umbrella policy, it had to be determined first whether the primary carrier, American, was liable to indemnify Francks. Viola argues that a garnishor may withdraw a writ of execution unless substantial harassment or vexation results to the garnishee. Further, Viola asserts that Fireman's Fund should not be entitled to the costs of defending the garnishment proceedings because Fireman's Fund did not proceed on the mer-

its of its answer and counterclaim, or request Magistrate Judge Smith to grant costs.[1]

Fed.R.Civ.P. 69(a) provides that the procedure on execution shall be in accordance with the practice and procedure of the state in which the district court sits when the remedy is sought. *United States v. Miller*, 229 F.2d 839, 840 (3d Cir.1956). Pa.R.Civ.P. 3145(a) provides that attachment interrogatories shall, as far as is practical, be treated as though the interrogatories were a complaint and the answer of the garnishee were an answer in a civil action. Under Fed.R.Civ.P. 41, a plaintiff may voluntarily dismiss a claim before answer or motion of summary judgment, or after an answer by stipulation of the parties and by order of court. With the exception of dismissal for lack of jurisdiction, improper venue, or failure to join a party under Rule 19, any dismissal not provided for by Rule 41(a) is an adjudication upon the merits. Fed.R.Civ.P. 41(b); *Landon v. Hunt*, 977 F.2d 829, 832 (3d Cir.1992). Under Pennsylvania procedure, "[a] discontinuance may not be entered as to less than all defendants without leave of the court after notice to all parties." Pa.R.Civ.P. 229(b).

Here, the court concludes that Viola's claims have not already been dismissed with prejudice. In the garnishment proceedings, Fireman's Fund filed an answer and counterclaim to Viola's garnishment writ. Subsequently, the docket for the garnishment proceedings indicates that on May 27, 1993, Viola filed a praecipe to withdraw without prejudice his writ of execution directed at Fireman's Fund. The docket does not indicate what action was taken with respect to Viola's praecipe and the parties have not provided copies of the pertinent court records. However, in any event it is clear the court made no adjudication on the merits: if the court granted Viola's request, Viola's writ of execution was withdrawn without prejudice; if Viola's withdrawal of his writ was invalid, the writ is still active and, therefore, Viola's claims against Fireman's

---

**1.** Viola cites *Unity Savings Association v. American Urban Sciences Foundation*, 337 Pa.Super. 470, 487 A.2d 356 (1984) for the principle that a garnishor may voluntarily withdraw a writ of execution provided that such withdrawal was not

harassing or vexatious to the garnishee. However, that principle does not help in answering the question here—whether the garnishor may reassert his right to recover against the garnishee in subsequent proceedings.

Fund have not been dismissed on the merits.[2]

### E. Coverage for Viola's Injuries Under Fireman's Umbrella Coverage

Fireman's Fund argues that Francks is not covered under its umbrella policy for causing Viola's injuries.[3] Fireman's Fund argues that whether it had an obligation to defend or indemnify Francks depends on the nature of the allegations in Viola's 1992 personal injury complaint. Fireman's Fund notes that Viola then alleged that while he was working, Francks violently battered him without warning, kicking him while he lay unconscious on the ground. Fireman's Fund asserts that based on these allegations, it did not have a duty to indemnify and defend Francks because the terms of the policy exclude coverage for Francks' acts. First, Fireman's Fund argues that its policy only covered injuries caused by accident and Viola's injuries were not caused accidentally. Second, Fireman's Fund contends that the policy excluded coverage for injuries to an employee who is acting within the scope of his employment when the injuries are caused by a fellow employee. Third, Fireman's Fund asserts that the policy excluded coverage for personal injuries that the insured intentionally caused.

As previously stated, in considering a 12(b)(6) motion to dismiss, the court must accept as true and view in the light most favorable to the plaintiff all allegations made in the complaint. *H.J. Inc.*, 492 U.S. at 249, 109 S.Ct. at 2905–06. Consequently, the court must accept as true Viola's present account of the facts relating to his injuries, and his explanation for having alleged a different set of the facts in his personal injury complaint. However, Viola's claims are premised on Francks' rights against Fireman's Fund arising from Fireman's Fund's breach of a duty to indemnify and defend Francks in Viola's personal injury suit. Whether Viola's present complaint states a valid legal claim against Fireman's Fund depends on whether the wording of Viola's original personal injury complaint was such that Fireman's Fund had a duty to provide Francks with indemnity and a defense.

In *Wilson v. Maryland Casualty Co.*, 337, Pa. 588, 377 Pa. 588, 105 A.2d 304 (1954), the Pennsylvania Supreme Court addressed a similar situation. The plaintiff, a restaurant owner, brought an indemnity claim against his insurance carrier for injuries caused to a patron. In his complaint, the plaintiff alleged that he had settled a personal injuries suit initiated by the patron, that the patron's injuries were caused by an accident during an altercation that had occurred among persons in the restaurant, and that the patron's injuries were covered by the insurer's policy. However, plaintiff had attached to his complaint a copy of the patron's complaint in the underlying suit, which stated that the patron's injuries were caused by an assault and battery perpetrated by the restaurant owner. *Id.* at 590–591, 105 A.2d 304. The insurer's policy excluded coverage for injuries caused by an assault and battery committed by the insured. The trial court entered judgment for the plaintiff because the insurer failed to answer the plaintiff's complaint. *Id.* at 598, 105 A.2d 304. On appeal, the Pennsylvania Supreme Court reversed and entered judgment for the defendant. *Id.* at 590, 595, 105 A.2d 304. The court held that

> the rule everywhere is that the obligation of a casualty insurance company to defend an action brought against the insured is to be determined solely by the allegations of the complaint in the action, and that the company is not required to defend if it would not be bound to indemnify the insured even though the claim against him should prevail in that action.

---

**2.** Viola argues that the present action is not the same as the garnishment proceedings because there Viola proceeded in his own name whereas here he proceeds in Francks' shoe. However, Viola was the named plaintiff in the garnishment proceedings, as he is now, and the issues raised then are the same as those raised here: whether Fireman's Fund had a duty to defend and indemnify Francks for his actions in causing injury to Viola.

**3.** Viola concedes that there is no coverage under the excess portion of Fireman's Fund's policy because Lebanon, the primary insurer, has not paid on the primary coverage.

*Id.* at 594, 105 A.2d 304. Further, referring to the insured's attempt to recharacterize the incident as an accident, the court stated that "[i]n the present case the cause of action against the insured, being for wilful assault and battery committed by him, could not be changed by amendment into a totally different cause of action based on negligence so as to bring it within the terms of the policy." *Id.* Consequently, the court looked to the allegations in the patron's original complaint to see whether the insurer had a duty to indemnify the plaintiff. *Id. See also Donegal Mut. Ins. Co. v. Ferrara,* 380 Pa.Super. 588, 552 A.2d 699, 701 (1989) (stating that court must look to the complaint filed against the insured in deciding whether an insurance company has a duty to indemnify and defend); *Pacific Indemnity Co. v. Linn,* 766 F.2d 754, 760 (3d Cir.1985) (holding that allegations in plaintiff's complaint are controlling as to whether plaintiff raises a claim against an insured to which an insurance policy potentially applies).

Consequently, in determining whether Viola states a valid legal claim, the court will compare Fireman's Fund's umbrella policy with the allegations in Viola's personal injury complaint, which Viola has attached to his instant complaint. *Cf. Pension Ben. Guar. Corp.,* 998 F.2d at 1196 (holding that court may consider exhibits attached to complaint and public records in determining whether plaintiff states a claim upon which relief can be granted).

#### i. No Occurrence Exists

[10] Fireman's Fund argues that its umbrella policy applies if an insured becomes obligated to pay damages for personal injury caused by an occurrence. Fireman's Fund notes that the policy defines an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions[.]" (Defend.Exhib. B at 4.) Fireman's Fund argues that in the allegations set forth in Viola's personal injury suit—the judgment for which Viola now seeks indemnity—Viola did not claim that his injuries were caused by Francks' accidental conduct; rather, Viola alleged that Francks attacked him from behind and kicked him in the legs and stomach while Viola lay on the floor.

The Pennsylvania Supreme Court established the following principles for interpreting insurance contracts:

> The task of interpreting [an insurance] contract is generally performed by a court rather than a jury. The goal of the task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to the language.

*Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 469 A.2d 563, 566 (1983) (citations omitted).

[11] Under the terms of the policy, Fireman's Fund provides coverage for injuries caused by an occurrence as defined in the policy. An occurrence is an accident, and a willful and malicious assault is not an occurrence but rather is an intentional tort. *Gene's Restaurant v. Nationwide Ins.,* 519 Pa. 306, 548 A.2d 246, 247 (1988). An intentional infliction of injury is not an occurrence warranting coverage. *Britamco Underwriters v. Giouzelis,* 1994 WL 622109 *2 (E.D.Pa. Nov. 8, 1994), *aff'd,* 65 F.3d 161 (1995). Again, injuries arising from an assault do not constitute an occurrence warranting coverage. *Britamco Underwriters v. Grzeskiewicz,* 433 Pa.Super. 55, 639 A.2d 1208, 1211 (1994).

[12] The duty to defend is a distinct and separate obligation from the duty to indemnify. *Erie Ins. Exchange v. Transamerica Ins.,* 516 Pa. 574, 533 A.2d 1363, 1368 (1987). The duty to defend arises whenever a complaint alleges injuries that may potentially fall within the policy coverage. *Grzeskiewicz,* 639 A.2d at 1210. When the complaint includes allegations that plaintiff's injuries were caused by either the intentional or negligent conduct of the insured, the insurer has a duty to defend the insured because the plaintiff's complaint raises the potential that

plaintiff's injuries were caused by accident. *Id.* 639 A.2d at 1211; *Bracciale v. Nationwide Mutual Fire Ins. Co.,* 1993 WL 323594 (E.D.Pa. Aug. 20, 1993). An insured "is not excused from its duty to defend until it becomes apparent that there are no circumstances under which the insurer would be responsible." *Little v. MGIC Indem. Corp.,* 649 F.Supp. 1460, 1466–67 (W.D.Pa.1986), *aff'd,* 836 F.2d 789 (3d Cir.1987). However, an insurer had no duty to defend the insured against a complaint alleging the wilful and malicious assault and beating of the plaintiff. *Gene's Restaurant,* 548 A.2d at 247.

The court concludes that Fireman's Fund did not owe Francks a duty to defend or indemnify him against allegations contained in Viola's personal injury suit. In Viola's complaint against Francks, Viola alleged that Francks "struck him from behind, without warning, crushing most of the bones in the right side of his face, and leaving him momentarily unconscious." (Plain.Exhib. A.) The complaint further alleged that while Viola was lying on the floor unconscious, Francks struck him in the face again and kicked him in the legs and stomach. The complaint does not raise the remotest possibility that Viola's injuries were caused by Francks' negligence or by accident. Consequently, the court concludes as a matter of law that Fireman's Fund had no duty to provide Francks with a defense or indemnity.

### ii. The Fellow Employee Rule

Fireman's Fund argues that its umbrella policy contains a fellow employee exclusion. This exclusion states that coverage does not apply to any employee of Colonial with respect to the injury of another employee in the course of such employment. (Defend.Ex-

hib. B at 5.) Fireman's Fund asserts that Viola was working at the time he was injured by Francks, and consequently, the "fellow employee" provision excludes Francks from coverage.

 Under Pennsylvania law, with respect to the "fellow employee" exclusion, an employee's injuries arise in the course of employment when the employee is injured while performing assigned work. *Forum Ins. Co. v. Allied Sec. Inc.,* 866 F.2d 80, 83 (3d Cir.1989). The fact that an attack was motivated by personal reasons unrelated to work does not vitiate the exclusion because it is not necessary that the attack was directed at the employee "as an employee." *Id.*

 Viola attempts to escape the effect of the "fellow employee" exception by wording his present complaint to state that Viola had not started work at the time of the incident. The present complaint states that Viola entered Colonial through the back door, and instead of starting work, approached Francks and began the conversation that precipitated Viola's injuries.

 However, Viola's complaint in his personal injury suit is the pertinent document as to whether Fireman's Fund breached a duty to defend and indemnify Francks. In his personal injury complaint, Viola alleged that "Charles Viola was working at Colonial Village Meat Market when Defendant Albert Franks [sic] struck him from behind...." (Plain.Exhib. A.) Consequently, based on Viola's allegations, Fireman's Fund's umbrella insurance policy did not potentially cover Francks for liability resulting from the injuries he inflicted on Viola because Francks injured Viola in the course of Viola's employment.[4]

---

4. Fireman's Fund additionally argues that even under the facts alleged in Viola's present complaint, the "fellow employee" provision excludes Francks from coverage. Fireman's Fund notes that the Third Circuit, interpreting Pennsylvania Supreme Court precedent, held that an employee's injuries "arose out of and in the course of his employment," even though the employee's injuries did not arise "in the course of employment" as that phrase is interpreted in the Pennsylvania Workers' Compensation Act. *Forum Ins. Co. v. Allied Sec. Inc.,* 866 F.2d 80, 81

(1989). The Pennsylvania Workers' Compensation Act provides;

> The term "injury arising in the course of his employment," as used in this article, shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment[.]

77 Pa.Stat.Ann. § 411(1) (Purdon Supp.1996). However, the *Forum Ins.* court held that with respect to the same language in an employer's

*iii. The "Expected or Intended" Exclusion*

■ Fireman's Fund argues that its umbrella coverage does not apply where the insured expected or intended to cause personal injury to the injured party. (Defend Exhib. B at 6.)[5] Fireman's Fund asserts that in Viola's personal injury complaint, Viola alleged a clear intentional battery and, hence, Fireman's Fund had no obligation to provide coverage to Francks.

■ Under Pennsylvania law, the "expected or intended" exclusion clause applies only when the insured acts with the specific intent to cause harm. *United Services Auto. v. Elitzky,* 358 Pa.Super. 362, 517 A.2d 982, 987 (1986). "Insurance coverage is not excluded because the insured's actions are intentional unless he also intends the resultant damage." *Id.* "Pennsylvania has adopted a general standard for determining the existence of this specific intent that looks to the insured's actual subjective intent." *Wiley v. State Farm Fire & Casualty Co.,* 995 F.2d 457, 460 (3d Cir.1993). "An insured intends an injury if he desires to cause the consequences of his act or if he acted knowing that such consequences were substantially certain to result." *Id.* 517 A.2d at 982. The intent element does not mean that the insured must have intended the specific harm. *Id.* 517 A.2d at 988.

If the plaintiff's complaint alleges a claim that the policy potentially covers, the insurer must defend the action. *Gedeon v. State Farm,* 410 Pa. 55, 188 A.2d 320, 312–22 (1963). If the plaintiff's complaint alleges negligence or recklessness, the insurer must defend the insured. *Aetna Life and Cas. Co. v. Barthelemy,* 33 F.3d 189, 193 (3d Cir. 1994).

The court concludes that Fireman's Fund had no obligation to defend or indemnify Francks because the policy's "expected or intended" clause excluded Francks from coverage. In his personal injury complaint, Viola alleged that Francks attacked him from behind without warning, and continued to strike Viola even when Viola was unconscious on the floor. In a disingenuous attempt to escape the effect of the "expected or intended" exclusion, Viola has fashioned his present complaint to allege negligence and self defense. Viola alleges that as result of concussion, Viola had no clear memory of the incident and only imagined that Francks had kicked him while he lay on the floor, and that Francks did not deliberately attack Viola but rather, believing he was in physical peril,

---

business liability policy, "arising out of [and in course of employment] means causally connected with, not proximately caused by. 'But for' causation, i.e., a cause and result relationship, is enough to satisfy the provision of the policy." *Forum Ins.,* 866 F.2d at 82 (citing *McCabe v. Old Republic Insurance Co.,* 425 Pa. 221, 228 A.2d 901, 903 (1967)). In *Forum Ins.,* while working as security guards, the assailant murdered the victim because of a personal dispute unrelated to their employment. *Id.* at 81. The court concluded that the victim's death arose out of the course of his employment. *Id.* at 83. Fireman's Fund argues that likewise, Francks' motivation for his attack is irrelevant; Viola's injuries arose out of the course of his employment because his injuries were causally connected to his employment in that he was at work at the time.

However, in *Forum Ins.,* the parties had agreed that the victim and assailant were at work at the time of the incident. *Id.* at 83. Here, in contrast, Viola alleges in his present complaint that he had not started work when the incident occurred. Viola's complaint states as follows:

a. Before the incident Francks was on the job working at Colonial Village, and Viola stopped in the parking lot on his way to work to talk to Dominic Pocoppio;

b. Viola then came into Colonial Village through the back door, and instead of starting work, Viola approached Francks;

c. At the time of the incident, Viola and Francks were talking, standing between two register counters at Colonial Village.

(Complaint at 13.) Construing these allegations in a light most favorable to the plaintiff, the court concludes that the complaint alleges that Viola had not started work when attacked by Francks. Therefore, under the facts alleged in the present complaint, the "fellow employee" exclusion would not apply.

5. The Expected or Intended Exclusion states:

. **Under Coverage B**—This Policy Does Not Apply:

*H. Expected or Intended*—To **Personal Injury** or **Property Damage** expected or intended from the standpoint of the Insured. This exclusion does not apply to:

(1) **Personal Injury** or **Property Damage** resulting from the use of reasonable force to protect persons or property, or

(2) The specific types of **Personal Injury** described in subsection (3) of the definition of Personal Injury [not applicable here].

(Defend Exhib. B at 4.)

Francks hit Viola in self defense. However, the wording of Viola's personal injury complaint determines whether Fireman's Fund had a duty to defend or indemnify Francks and, from the court's reading of the original complaint, it is clear that Viola averred that Francks' actions were an intentional tort and that Francks intended to cause the type of harm sustained by Viola.[6]

### F. Breach of Contract and Bad Faith Claims

Viola's claim for breach of contract is dismissed because, as already stated, Fireman's Fund did not owe Francks a duty to indemnify or defend. Similarly, Viola's bad faith claim is dismissed because Fireman's Fund had a reasonable basis for denying indemnity and legal assistance to Francks. *See Polselli v. Nationwide Mutual Fire Ins. Co.*, 23 F.3d 747, 751 (3d Cir.1994) (holding that for bad faith claim under 42 Pa.Stat.Ann. § 8371, plaintiff must show defendant lacked reasonable basis for denying claim and defendant's knowledge or reckless disregard for lack of reasonable basis).

### G. Breach of Fiduciary Duty

Viola's breach of fiduciary duty claim is dismissed because no fiduciary duty existed between Francks and Fireman's Fund. *See Connecticut Indemnity Co. v. Markman*, 1993 WL 304056 *6 (E.D.Pa. Aug.6, 1993) ("an insurer only assumes a

---

6. Fireman's Fund raises two additional arguments for why Francks is not covered by Fireman's Funds' policy. First, Fireman's Fund argues that the umbrella coverage applies only if insurance provided by a primary insurer does not apply. Fireman's Fund's policy provides two forms of coverage: excess liability and umbrella liability. Excess liability applies to injuries or damages covered by the primary insurer for which the primary insurance is exhausted. Umbrella insurance covers injuries and damages of a type that are not covered by primary insurance. (Defend.Exhib. B at 1.) Consequently, Fireman's Fund argues that by its terms, the umbrella policy does not apply until and unless the Delaware County court rules that the insurance provided by the primary insurer, Lebanon, does not apply.

In response, Viola states that the issue of coverage under Lebanon's policy is moot because on January 27, 1993, the Delaware County court entered default judgment against Francks in Lebanon's declaratory judgment action. In reply, Fireman's Fund contends that the Delaware court has not made any declaration regarding

fiduciary duty when it asserts a stated right under the policy to handle all claims brought against the insured").

### III. CONCLUSION

In sum, Viola's complaint is dismissed with prejudice because his complaint fails to state a claim upon which relief can be granted. The court concludes as a matter of law that Fireman's Fund was not obliged to indemnify and defend Francks in Viola's 1992 personal injury suit because Viola's personal injury complaint alleged that Francks intentionally injured Viola while Viola was working, and Fireman's Fund's policy excludes coverage for such conduct.

---

coverage under Lebanon's policy in that the court granted a default judgment against Francks solely because Francks did not defend himself in the state action.

Fireman's Fund further argues that for Viola to recover under the umbrella policy, Viola must prove that Lebanon's policy does not apply. However, Fireman's Fund argues that if Lebanon's policy does not apply, then Fireman's Fund's umbrella policy does not apply because the Lebanon and Fireman's Fund policies contain similar provisions. Specifically, Fireman's Fund argues that both policies have almost identical provisions defining who is an "insured," limiting coverage to accidental events, excluding coverage for fellow employee injuries, and excluding coverage for intentional acts.

The court declines to address these issues because comparing Fireman's Fund's policy and Viola's underlying complaint, the court concludes that Fireman's Fund was not obliged to indemnify or defend Francks.