J-A08035-21

2021 PA Super 94

| | | |
|---|---|---|
| JERRY A. MERCER, JR., AND JERRY A. MERCER, III | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | No. 62 EDA 2020 |
| MARTIN P. NEWELL, JR., AND M.P.N., Inc. d/b/a ACTIVE RADIATOR REPAIR Co. | : | |

Appeal from the Order Entered December 17, 2019
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 190607041

BEFORE:   PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.:                              Filed: May 13, 2021

Appellants Jerry A. Mercer, Jr., (hereinafter "Mercer") and Jerry A. Mercer, III, (hereinafter collectively "Appellants") appeal from the Order entered in the Court of Common Pleas of Philadelphia County on December 17, 2019, sustaining Preliminary Objections filed by Appellees Martin P. Newell, Jr., (hereinafter "Newell") M.P.N., Inc. d/b/a Active Radiator Repair Co., (hereinafter "Active Radiator") (hereinafter collectively "Appellees") and dismissing Appellants' Amended Complaint in its entirety.  Following our review, we reverse.

On June 29, 2019, Appellants filed a Complaint against Appellees wherein they set forth allegations pertaining to Mercer's exposure to lead while

_____

* Former Justice specially assigned to the Superior Court.

employed with Active Radiator, a radiator plant. Appellees filed Preliminary Objections to the Complaint, and, in response, Appellants filed an Amended Complaint on October 1, 2019.

In their Amended Complaint, Appellants alleged that from May of 2015 until November 17, 2017, Mercer worked for Active Radiator where he soldered parts into heavy-duty radiators and cooling devices.[1]  Amended Complaint at ¶11.  Newell owns and operates Active Radiator.  *Id*. at ¶ 6. During his employment, Mercer utilized an alloy of lead and cadmium when assembling radiators.  *Id*. at ¶ 12.  As a worker exposed to lead and cadmium, Mercer was entitled to health protections pursuant to the relevant Occupational Safety and Health Administration ("OSHA") regulations.  *Id*. at 1¶¶ 4-14.  Consequently, Active Radiator monitored Mercer's lead and zinc exposure through blood analysis and his cadmium level by urinalysis.  *Id*. at 15-16.

On October 19, 2016, Mercer's blood was tested.  On November 2, 2016, Dr. Andrew Bandulak at Jefferson Health in Philadelphia reviewed Mercer's zinc levels and directed Appellees to remove Mercer from further lead exposure until he received a medical evaluation and a toxicology consult.  *Id*. at ¶ 30.  The November 2, 2016, note provided Appellees with notice "that lead was accumulating in Mercer's brain."  *Id*. at 32.

---

[1] Jerry A. Mercer, III, is Mercer's son and resided with him throughout his employment with Appellees.  Amended Complaint at ¶ 2.

In a corresponding letter from Appellees addressed to Mercer and dated May 13, 2016, Anthony J. Coscia, Safety Manager, recommended that Mercer see his doctor regarding his blood levels, and directed Mercer to contact Mr. Coscia at Active Radiator or Dr. Barnes with any questions and listed the doctor's phone number. *Id*. at 35. However, the letter indicated that Mercer's blood lead level was at 35 mcg/dL and that the "action level" for OSHA blood lead level exposure is 40 mcg/dL or greater. The letter did inform Mercer that his Zinc Protoporphyrin level of 216 mcg/dL was abnormal and "could mean [he had] low iron in [his] blood." Mercer acknowledged receipt of the letter by signing it in the bottom left corner. *See* Exhibit 1 to Amended Complaint, May 13, 2016, Letter.[2]

However, between November 2, 2016, and November 17, 2017, Appellees concealed the fact that Dr. Bandulak had ordered Mercer to be removed from further lead exposure and provided with Medical Removal Benefits. *Id*. at ¶34. Instead, Romeo, an Active Radiator Employee, gave Mercer a copy of the May 13, 2016, letter and threatened to fire Mercer if his "zinc got any higher with no money." *Id*. at 36. Believing his 216 zinc-level was elevated but not harmful unless it increased, Mercer continued to work at Active Radiator for another year until Appellees terminated his employment in November of 2017. *Id*. at ¶¶ 37-38, 43.

---

[2] Since the letter predated the test results by 4 months, Appellants acknowledge it appears the date of May 13, 2016, is a clerical error. *See* Brief for Appellants at 11.

Appellants maintained Appellees "fraudulently concealed from Mercer's [sic] Dr. Bandulak's order that AR "REMOVE" Mercer "ASAP" from further lead-exposure until AR provided Mercer with Medical Removal Benefits []." *Id*. at 39. Appellants did not assert a claim for the initial accumulation of lead in Mercer's brain that allegedly occurred between May of 2015, to 2016; rather, Appellants asserted that without notice of the elevated lead and zinc levels, Mercer continued working which aggravated the accumulation of lead in his brain to cause him permanent brain damage. *Id*. at ¶ 121. All of the actions Active Radiator had taken were either done by Newell or at his express direction. *Id*. at ¶ 120. As a result, Appellants sought compensatory and punitive damages against Appellees as well as medical monitoring funding.

On November 20, 2019, Appellees filed Preliminary Objections to Appellants' Amended Complaint in the nature of a demurrer. Therein, they asserted Appellants' lawsuit is barred by the Workers' Compensation Act (WCA),[3] which, aside from very limited circumstances, provides the exclusive

---

[3] Section 303 of the WCA provides, in relevant part, as follows:

> (a) The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes [sic], his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 481(a).

remedy for any injury an employee sustains during the course of his employment. On December 17, 2019, the trial court entered an Order sustaining Appellees' Preliminary Objections and dismissing the Amended Complaint.

Appellants filed a timely appeal on December 18, 2019. The trial court did not enter an Order pursuant to Pa.R.A.P. 1925(b); however, it filed a Rule 1925(a) Opinion on June 16, 2020.

In their brief, Appellants present the following Statement of Questions Involved:

> 1. Did the [t]rial [c]ourt err by failing to evaluate [Appellants'] Amended Complaint under the proper standard of review in the context of preliminary objections in the nature of a demurrer when it found that their Amended Complaint was legally insufficient to establish a right to relief?
>
> 2. Did the [t]rial [c]ourt err in its holding that the Pennsylvania Workers' Compensation Act, 77 P.S. § 1, *et. seq*. ("WCA"), specifically the "exclusivity provision" of the WCA, 77 P.S. 481(A), applied to bar all of [Appellants'] claims thereby making their entire Amended Complaint legally insufficient, where, as here and in contravention of the holding in *Martin v. Lancaster Battery Co*., 606 A.2d 444 (Pa. 1991), [Appellants] are not seeking damages at law for a work related injury, but for an aggravation of a work related injury due to Active Radiator's fraudulent misrepresentations?
>
> 3. Did the [t]rial [c]ourt err in finding that [Appellants'] Amended Complaint against Appellee Martin P. Newell. Jr., was legally insufficient despite its factual averments that Mr. Newell ether personally participated in or expressly directed the fraudulent misrepresentations by Active Radiator to Mr. Mercer thereby aggravating his pre-existing work-related brain damage?

Brief for Appellants at 5-6. As these issues are interrelated, we will consider them together.

In determining whether a trial court properly sustained preliminary objections granting a demurrer, we examine the averments in the complaint, together with the documents and exhibits attached thereto, to evaluate the sufficiency of the facts averred. The purpose of the inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. **Donaldson v. Davidson Bros., Inc.,** 144 A.3d 93, 100 (Pa.Super. 2016) citing **Yocca v. Pittsburgh Steelers Sports, Inc.,** 854 A.2d 425, 436 (Pa. 2004). We will reverse the trial court where there has been an error of law or abuse of discretion. **Id.** Because the trial court's decision to grant or deny a demurrer involves a matter of law, our standard of review is plenary. **Id.** "Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it." **American Express Bank, FSB v. Martin**, 200 A.3d 87, 93 (Pa.Super. 2018).

With regard to a demurrer, this Court has held:

A demurrer is an assertion that a complaint does not set forth a cause of action or a claim on which relief can be granted. A demurrer by a defendant admits all relevant facts sufficiently pleaded in the complaint and all inferences fairly deducible therefrom, but not conclusions of law or unjustified inferences. In ruling on a demurrer, the court may consider only such matters as arise out of the complaint itself; it cannot supply a fact missing in the complaint. Where the complaint fails to set forth a valid cause of action, a preliminary objection in the nature of a demurrer is properly sustained. When analyzing a demurrer, the court need not consider the pleader's conclusions of law,

unwarranted inferences from facts, opinions, or argumentative allegations. To determine if the trial court properly sustained preliminary objections, this Court examines the averments in the complaint and the documents attached to the complaint to evaluate the adequacy of the facts averred and to assess the legal sufficiency of the complaint. We will reverse a trial court's decision to sustain preliminary objections only if the trial court has committed an error of law or an abuse of discretion. Where the complaint fails to set forth a valid cause of action, a preliminary objection in the nature of a *demurrer* is properly sustained.

*Id*. (citations and quotation marks omitted).

In their brief, Appellants state their civil action for damages arises out of the aggravation of the work-related, initial lead exposure. They explain Mercer suffered permanent brain damage as a result of his repeated exposure to lead cadmium alloy due to Appellees' failure to advise him of his abnormal blood test results and remove him from lead exposure in November of 2016. Brief for Appellants at 7. Specifically, Appellants state "Active Radiator was told to remove Mr. Mercer from lead exposure and to have him evaluated by a doctor and a toxicologist. And it failed to do so for at least 12 months from November 2016, through November 2017, thereby causing an aggravation of his prior work-related injury." *Id*. at 16-17. Thus, Appellants contend the fraudulent misrepresentations which form the basis of their action are not barred by the WCA, and the matter should proceed to enable them to complete full discovery and develop a factual record under the narrow exception set forth in *Martin v. Lancaster Battery Co.*, 530 Pa. 11, 606 A.2d 444 (1992). Brief for Appellant at 7, 17.

In **Martin**, the Pennsylvania Supreme Court observed an employee had pleaded sufficient facts in his Complaint to support a cause of action for fraudulent misrepresentation and in doing so reasoned as follows:

> A cause of action for fraudulent misrepresentation is comprised of the following elements: "(1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation and (5) damage to the recipient as the proximate result." *Scaife Co. v. Rockwell–Standard Corp.,* 446 Pa. 280, 285, 285 A.2d 451, 454 (1971), *cert. denied,* 407 U.S. 920, 92 S.Ct. 2459, 32 L.Ed.2d 806 (1972).
>
> In the instant action, the appellees have averred that Mr. Martin was regularly exposed to lead fumes and dust at his place of employment. He was tested by his employer to monitor the level of lead in his blood. His employer willfully and intentionally withheld the test results from him or gave altered blood test results to him. According to an attachment to the appellees' complaint, the company policy was to closely monitor lead levels in employees' blood and to report the results to the employees so that those with elevated levels of lead in their blood could transfer to non-lead areas at LBC. This course of action was not followed in Mr. Martin's case. Had Mr. Martin been told about the elevated levels of lead in his blood when the tests first indicated such levels, he could have promptly reduced his exposure to lead and received timely and appropriate medical care. Consequently, the severity of his condition would have been substantially reduced.
>
> The appellees' have averred, in a manner that will permit the preparation of a defense and that does not constitute a subterfuge, misrepresentation, fraudulent utterance, intention by the maker that the recipient will act, justifiable reliance by recipient upon the misrepresentation, and damages to the recipient as a proximate result. Thus, the averments of appellees' complaint set forth with particularity a cause of action for fraudulent misrepresentation.

*Id.* at 18–19, 606 A.2d at 448.[4]

Our Supreme Court ultimately held that the alleged aggravation of the employee's injury arose from and was related to the alleged fraudulent misrepresentation of the employer; thus, the appellees were not limited to their remedies under the WCA and were not precluded from bringing a common law action against the employer for an aggravation to that injury as the result of the employer's fraudulent misrepresentations. *Id* at 449.

Herein, in its brief Rule 1925(a) Opinion, the trial court acknowledged the ***Martin*** exception applied to intentional and fraudulent misrepresentations of information that causes a delay in an employee's medical care which aggravates his or her pre-existing, work related injury. ***See*** Trial Court Opinion, filed 6/6/20, at 3. Yet, without explanation, the trial court baldly held that it properly dismissed Appellants' "claims of medical monitoring, battery, and intentional infliction of emotional distress because the WCA barred such claims against M.P.N., Inc., and the ***Martin*** exception did not apply." *Id*. at 4.

In addition, the trial court found ***Martin*** barred Appellants' fraudulent misrepresentation claim because the Amended Complaint failed to aver sufficient facts to plead a misrepresentation or a delay in his medical care

---

[4] While in their reply brief Appellants maintained that the ***Martin*** case had been decided on summary judgment, ***see*** Reply Brief for Appellant at 1-2, at oral argument, Appellants correctly indicated that, in fact, ***Martin*** had been decided following the filing of preliminary objections.

which exacerbated his pre-existing, work related injury. The court further observed that the exhibits attached to the complaint evince that he was on actual notice of his blood test results and was urged to seek medical treatment for his abnormal blood Zinc Protoporphyrin level. *Id*. The trial court also concluded that since Appellants' claims against Newell were pled against him in his capacity as Active Radiator's corporate officer, it properly dismissed the claims against Newell as well. *Id*. at 5. Upon our review of the record, we hold the trial court abused its discretion in reaching this result.

As stated previously, Appellants allege that in November of 2016 Dr. Bandulak instructed Appellees to remove Mercer from lead exposure immediately and have him seen by a physician and toxicologist as soon as possible, but it failed to do so for at least 12 months resulting in the aggravation of a prior work-related injury; these allegations are supported by the November 2, 2016, letter attached to the Amended Complaint as Exhibit 3. Moreover, while the erroneously-dated May 13, 2016, letter from Safety Manager Coscia advised Mercer of his blood levels, this document did not indicate the levels were dangerous, nor did it instruct him to seek a medical evaluation or inform him that Active Radiator's physician had ordered that he be removed from further lead exposure. Significantly, Appellees allegedly took no steps to remove Martin from further lead exposure and this led to his suffering permanent brain damage as a result of the exacerbation of the previous lead exposure.

As was the case in **Martin**, Appellants have alleged fraudulent misrepresentation on the part of Appellees caused a delay in Mercer's removal from his further lead exposure which aggravated a previous, work related lead accumulation in Mercer's brain to permanent brain damage; Appellants are not seeking compensation for the work-related injury itself in the instant action, *See* Amended Complaint at ¶¶ 121; **Martin**, *supra* at 447. Thus, for the above reasons and consistent with **Martin**, we find Appellants have averred with particularity a cause of action for fraudulent misrepresentation, and, therefore, the trial court erred in sustaining the Preliminary Objections' demurrer. Consequently, we reverse the trial court's December 18, 2019, Order sustaining Appellees' Preliminary Objections and remand this matter for further proceedings.

Order Reversed. Remanded for further proceeding consistent with this Opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/13/21

- 11 -