**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1035
_____

ZENITH INSURANCE COMPANY,
Appellant

v.

MARTIN P. NEWELL, JR.; M.P.N., INC.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2:20-cv-03878)
District Judge: Honorable Wendy Beetlestone
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 9, 2024
_____

Before: CHAGARES, <u>Chief</u> <u>Judge</u>, ROTH and RENDELL, <u>Circuit</u> <u>Judges</u>

(Opinion filed: December 5, 2024)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Chief Judge.

Plaintiff Zenith Insurance Company ("Zenith"), which provided workers'

compensation and employers' liability insurance for defendant M.P.N., Inc. ("M.P.N."),

filed this lawsuit seeking a declaration that it has no duty to defend M.P.N. in a state-

court action brought by its former employee, Jerry Mercer, Jr., and his son, Jerry Mercer,

III (the "Mercer Action").[1]  M.P.N. filed a counterclaim, seeking the contrary declaration

that Zenith is under a duty to defend M.P.N., as well as damages to compensate it for the

costs it incurred in defending itself.  After holding that one claim asserted in the Mercer

Action potentially falls within the scope of M.P.N.'s insurance policies, the District Court

entered a partial judgment declaring that Zenith must defend M.P.N. in the Mercer Action

and awarding damages.[2]  We will affirm.

I.

We write solely for the parties and so recite only the facts necessary to our

disposition.  Mercer, Jr. was employed to solder radiator parts in M.P.N.'s Philadelphia

assembly plant between May 2015 and November 2017.  Because soldering involves

toxic chemicals, M.P.N. was required by OSHA regulations to monitor his blood during

his employment.  When testing performed in 2016 revealed his blood to contain unsafe

levels of lead, however, M.P.N. allegedly first concealed the results from him, then lied

---

[1] Zenith also sought, and the District Court granted, a declaration that it has no duty to defend defendant Martin P. Newell, Jr. in the Mercer Action.  Newell has not appealed that ruling and has not appeared in this appeal.

[2] The judgment was partial because it addressed the parties' dispute over Zenith's duty to defend without resolving their dispute over whether Zenith has a duty to indemnify M.P.N. for whatever liability may be imposed upon it in the Mercer Action.

about them. Mercer, Jr. therefore continued his soldering work despite the health risks posed by continued exposure to toxic chemicals. By the time his employment was terminated, on November 17, 2017, the lead that had allegedly accumulated in his brain caused him to suffer permanent brain damage.

The Mercers filed the Mercer Action in June 2019 in the Court of Common Pleas of Philadelphia County, asserting claims against M.P.N. and Newell for fraudulent misrepresentation, medical monitoring, battery, and intentional infliction of emotional distress.[3] The Court of Common Pleas dismissed the Mercer Action on the grounds that the Mercers could recover for their injuries only under Pennsylvania's Workers' Compensation Act, which provides the exclusive remedy, outside certain limited exceptions, for injuries suffered by employees during the course of their employment.[4] Mercer v. Newell, 254 A.3d 755, 757 (Pa. Super. Ct. 2021). The Pennsylvania Superior Court reversed. Id. at 756. In Martin v. Lancaster Battery Co., 606 A.2d 444 (Pa. 1992), the Pennsylvania Supreme Court established that the "workmen's compensation statute is not the exclusive remedy for the aggravation of an employee's work-related injury where the employer's fraudulent misrepresentation has been alleged." Id. at 447. The Superior Court held that the Mercers' fraudulent misrepresentation claim fell within the Martin exception to the exclusivity of workers' compensation as a remedy for employment-

---

[3] Mercer, III, who was not employed by M.P.N. himself but who lived with Mercer, Jr. during the period of the latter's employment, joined only the claim for medical monitoring.

[4] The Mercers additionally filed a claim for workers' compensation, but the parties to this case do not dispute Zenith's insurance obligations with respect to that claim. See Zenith Br. 8 n.4; M.P.N. Br. 4-5.

related injuries.  Mercer, 254 A.3d at 760.  The Mercers then voluntarily dismissed their three remaining claims, for medical monitoring, battery, and intentional infliction of emotional distress, and the case was remanded to the Court of Common Pleas on July 12, 2022.  See Mercer v. Newell, 278 A.3d 309, 310 (Pa. 2022).  That court granted the defendants' motion for summary judgment as to the remaining claim, for fraudulent misrepresentation, on January 10, 2024.  The Mercers' appeal from that decision remains pending.

During the pendency of the Mercer Action in state court, a parallel dispute proceeded concerning the scope of M.P.N.'s insurance coverage for the Mercer Action. M.P.N. purchased three identical insurance policies from Zenith (the "Policies"), which covered each of the three years between March 17, 2015 and March 17, 2018.  The Policies provided M.P.N. with coverage for employers' liability, which obligated Zenith to indemnify M.P.N. for any damages it owed due to bodily injury suffered by its employees during their employment.  It further required Zenith to defend M.P.N. against any claim "payable by this insurance."  JA 382.  But that coverage was also subject to certain exclusions:  relevant here, M.P.N. was not covered under Exclusion C.5 for any claim brought by an employee for "[b]odily injury intentionally caused or aggravated by [M.P.N.]."  Id.

Shortly after the Mercer Action was filed, M.P.N. sought coverage from Zenith under the Policies.  Zenith denied coverage and refused to defend M.P.N. on the grounds that the claims asserted fell within the Policies' exclusions.  Zenith then filed this lawsuit against M.P.N. and Newell on August 10, 2020, seeking, inter alia, a declaration that it

4

had no duty to defend or indemnify M.P.N. with respect to the Mercer Action. M.P.N. and Newell answered and counterclaimed, seeking, <u>inter alia</u>, a declaration that Zenith was obligated to defend and indemnify M.P.N. in the Mercer Action, and damages caused by Zenith's initial failure to provide a defense. Zenith moved for judgment on the pleadings, while M.P.N. and Newell moved for partial summary judgment on the question of Zenith's duty to defend the Mercer Action. The District Court granted each motion in part, holding that "Zenith has a duty to defend M.P.N." in the Mercer Action. JA 29.

Zenith appealed the portion of the District Court's order that upheld its duty to defend M.P.N. in the Mercer Action. <u>Zenith Ins. Co. v. Newell</u>, 78 F.4th 603, 606 & n.4 (3d Cir. 2023). This Court dismissed that appeal for lack of jurisdiction, however, because the District Court's order was neither a final decision for purposes of 28 U.S.C. § 1291 nor an injunction for purposes of 28 U.S.C. § 1292(a)(1). <u>Zenith Ins. Co.</u>, 78 F.4th at 604-05. On remand, Zenith moved for the entry of partial judgment, pursuant to Federal Rule of Civil Procedure 54(b), or, in the alternative, for the certification for interlocutory appeal of the order granting partial summary judgment, pursuant to 28 U.S.C. § 1292(b). The District Court granted the motion and entered partial judgment in favor of M.P.N. as to the existence of Zenith's duty to defend. This timely appeal followed.

## II.[5]

"Under Pennsylvania law, an insurer has a duty to defend if the complaint filed by the injured party potentially comes within the policy's coverage." Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 225 (3d Cir. 2005). Zenith does not deny that a Martin claim for fraudulent misrepresentation would fall within the provision of the Policies indemnifying M.P.N. for employers' liability, as that provision applies to bodily injury that arises in the course of employment and is caused or aggravated by the conditions of employment. JA 381; see Zenith Br. 16-18. Rather, in its view, coverage for the Mercer Action is barred by the Policies' exclusions. It provides two reasons why the claim for fraudulent misrepresentation is excluded by Exclusion C.5, which applies to "[b]odily injury intentionally caused or aggravated by [M.P.N.]." JA 382. First, it argues that any successful Martin claim would fall within Exclusion C.5, since such a claim requires proof that the plaintiff's injury was intentionally caused or aggravated by the employer. Zenith Br. at 16-17. Second, it argues that the Mercers' specific Martin claim falls within Exclusion C.5, since their state-court complaint alleges that Mercer, Jr.'s injury was intentionally aggravated by M.P.N. Id. at 17-18. We address each argument in turn.

## A.

Like the District Court and M.P.N., Zenith interprets the term "intentionally" in

---

[5] The District Court had jurisdiction under 28 U.S.C. § 1332. Because the District Court entered a valid partial judgment pursuant to Federal Rule of Civil Procedure 54(b), see JA 2, we have jurisdiction under 28 U.S.C. § 1291. Elliott v. Archdiocese of N.Y., 682 F.3d 213, 219 (3d Cir. 2012). "We employ a plenary standard in reviewing orders entered on motions for summary judgment, applying the same standard as the district court." Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014).

6

Exclusion C.5 by reference to United Services Automobile Ass'n v. Elitzky, 517 A.2d 982 (Pa. Super. Ct. 1986), which held "intent" to require either the desire to cause certain consequences or the knowledge that those consequences were substantially certain to result. Id. at 989. Under that interpretation, however, a successful Martin claim does not require a plaintiff's injury to have been caused intentionally. The Pennsylvania Supreme Court in Martin permitted employees to bring claims against their employers for fraudulent misrepresentations that aggravate a work-related injury. 606 A.2d at 447 ("The employee herein has alleged fraudulent misrepresentation on the part of his employer as causing the delay which aggravated a work-related injury."). And a Pennsylvania claim for fraudulent misrepresentation requires "the intent of misleading another into relying on" the representation. Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994). The Mercers' Martin claim thus could not succeed unless M.P.N. intended Mercer, Jr. to rely on its allegedly false communications concerning his blood tests. But M.P.N. could have intended Mercer, Jr. to rely on its misrepresentations and continue his soldering work without intending — that is, desiring or being substantially certain — that he would be injured. And the latter intent, not the former, is required for Exclusion C.5 to apply. See Elitzky, 517 A.2d at 987 ("Insurance coverage is not excluded because the insured's actions are intentional unless he also intended the resultant damage."). As the Mercers could prevail on their Martin claim by proving that M.P.N. intended Mercer, Jr. to rely on its misrepresentation without intending him to be injured, in which case Exclusion C.5 could not apply, the claim "potentially comes within the policy's

7

coverage." Sikirica, 416 F.3d at 225.[6]

### B.

If Martin claims do not require proof of the employer's intent to aggravate the plaintiff's injury, then they are not automatically excluded under Exclusion C.5. Zenith nonetheless argues that the specific Martin claim asserted in the Mercer Action does fall within that exclusion because the Mercers specifically allege that M.P.N. intentionally aggravated Mercer, Jr.'s injury. It first points to the factual allegations setting forth M.P.N.'s unlawful conduct, which "describe a situation where the insured allegedly knew that Mercer[,] Jr. had been injured by hazardous workplace conditions and deliberately misled Mercer[,] Jr. to keep him working in the same hazardous conditions and prevent him from obtaining medical aid." Zenith Br. 32-33. Perhaps Zenith is correct that these facts made "the aggravation of Mercer[,] Jr.'s injury . . . 'substantially certain.'" Id. at 33. But Pennsylvania law "looks to the insured's actual subjective intent" in applying insurance exclusions for intentional harm (outside the exceptional context of child sexual assault). Minn. Fire & Cas. Co. v. Greenfield, 855 A.2d 854, 863 (Pa. 2004) (quoting Wiley v. State Farm Fire & Cas. Co., 995 F.2d 457, 461 (3d Cir. 1993)). On their own, then, allegations that M.P.N.'s misrepresentation made the aggravation of Mercer, Jr.'s

---

[6] While Zenith also suggests that contractual coverage for this claim would be void as against Pennsylvania's public policy that wrongdoers must bear the costs of their intentional wrongs, Zenith Br. 21, 26-27, 33, the Superior Could held expressly in Elitzky that the interpretation it adopted of "intent" was "coterminous with the public policy exclusion," 517 A.2d at 989. A claim that is covered notwithstanding Exclusion C.5, then, cannot be denied coverage on the grounds that public policy prohibits the insurance of wrongdoing.

injury substantially certain still allow the Mercers' <u>Martin</u> claim to "potentially come[]

within the policy's coverage." <u>Sikirica</u>, 416 F.3d at 225. M.P.N. may have subjectively

lacked substantial certainty as to Mercer, Jr.'s injury, whether due to carelessness,

irrationality, or self-deception, in which case Exclusion C.5 would not apply.

To demonstrate that M.P.N. subjectively possessed substantial certainty that injury

would result, Zenith points to one further allegation, which is found in the complaint's

statement of its since-abandoned claim for battery rather than among its other allegations

of fact. <u>See</u> Zenith Br. 29-31. An employee adequately pleads a claim for battery under

Pennsylvania law by alleging that his employer deliberately introduced toxic substances

into the workplace knowing that harmful exposure would result. <u>Field v. Phila. Elec. Co.</u>,

565 A.2d 1170, 1178 (Pa. Super. Ct. 1989). Mercer, Jr. therefore pleaded his claim for

battery pursuant to <u>Field</u> by alleging that M.P.N. was substantially certain that he would

suffer harmful exposure to toxic metals during his continued employment. JA 302.

Zenith argues that this allegation establishes Mercer, Jr's injuries to have been

intentionally caused and that, as a result, the claims asserted in the Mercer Action could

not potentially be covered by the Policies.

The Pennsylvania Supreme Court has cautioned, however, that "the particular

cause of action that a complainant pleads is not determinative of whether coverage has

been triggered." <u>Mut. Benefit Ins. Co. v. Haver</u>, 725 A.2d 743, 745 (Pa. 1999). The

Mercers' mere recital of the elements of battery thus cannot determine whether Zenith's

duty to defend was triggered. "Instead it is necessary to look at the factual allegations

contained in the complaint." <u>Id.</u> Where those allegations, if proven, would establish as a

9

matter of law that the defendant possessed a particular mental state, a court may apply an exclusion that bars coverage for acts performed with that mental state. See, e.g., id. at 746 ("We find that these factual allegations against a pharmacist constitute 'knowing endangerment' as a matter of law, and therefore the knowing endangerment exclusion in the policy prevents Mutual Benefit from having to defend or indemnify [the pharmacist]." (footnote omitted)). But the factual allegations pleaded in the Mercer Action leave open the question of M.P.N.'s subjective intent. And, as discussed, Pennsylvania applies insurance exclusions based on the insured's actual subjective intent rather than allowing intent to be inferred as a matter of law. Greenfield, 855 A.2d at 863.

The question thus remains unresolved, at this stage of the Mercer Action, whether the facts alleged would suffice to prove to a jury that M.P.N. was substantially certain that Mercer, Jr. would be injured by his continued employment. Furthermore, as the employer's substantial certainty is an element only of battery, not of fraudulent misrepresentation, the Mercers' Martin claim could still succeed even were M.P.N. found to have lacked substantial certainty that Mercer, Jr.'s injury would be aggravated by continued employment. And in that event Exclusion C.5 would not apply. "As long as the complaint might or might not fall within the policy's coverage, the insurance company is obliged to defend," Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 541 (Pa. 2010) (quotation marks omitted), at least "until such time that the claim is confined to a recovery that the policy does not cover," Gen. Accident Ins. Co. of Am. v. Allen, 692 A.2d 1089, 1095 (Pa. 1997). Unless and until the Mercers' Martin claim becomes confined to a recovery for injury that M.P.N. was substantially certain would

10

result from its fraudulent misrepresentation, the claim "might or might not fall within the [Policies'] coverage." Jerry's Sport Ctr., 2 A.3d at 541 (quotation marks omitted). At present, then, Zenith must defend M.P.N.[7]

III.

For the foregoing reasons, we will affirm the Order of the District Court.

---

[7] Because we conclude that the Mercers' Martin claim triggered Zenith's duty to defend, we need not consider Zenith's arguments that the remaining claims asserted in the Mercer Action could not potentially be covered by the Policies due to a different exclusion. See Zenith Br. 33-36.